# CUNA Mutual Insurance Society

### v.

## Lenora D. Norman

Record No. 860529

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

* Justice Poff prepared and the Court adopted the opinion in this case prior to the effective date of his retirement on December 31, 1988.

*Lance A. Jackson (Edward L. Breeden, III; Breeden, MacMillan & Green*, on briefs), for appellant.
*L. Steven Emmert* for appellee.

POFF, J., delivered the opinion of the Court.

Plaintiff Lenora D. Norman filed a motion for judgment against CUNA Mutual Insurance Society (CUNA) alleging that her hus-

band, Robert D. Norman, had been covered at the time of his death by a CUNA life insurance policy and that CUNA had disclaimed coverage. CUNA denied liability, and the case was tried to the circuit court sitting without a jury.

Robert D. Norman, a veteran of 30 years' service in the United States Navy, retired from active duty as a Captain in 1975. On August 20, 1980, he executed a promissory note representing a $10,000 loan he had acquired from Virginia Beach Navy Federal Credit Union (the credit union) of which he was a member. CUNA had issued the credit union a group credit life insurance policy insuring payment of a member's loan that is unpaid when due.

Captain Norman's loan was due August 20, 1981. On August 5, 1981, Norman and the credit union agreed to postpone the due date. The parties memorialized their agreement in the following language typed on the credit union's stationery, subscribed by Captain Norman and witnessed by a credit union representative: "I, Robert Norman do agree to pay off my share secured loan on October 1, 1982." Captain Norman died on October 14, 1982. The unpaid principal and interest accrued on his loan at the time of his death amounted to $11,191.77.

CUNA maintained at trial that Captain Norman was never insured under its policy because, at the time the loan was closed, he was not "then physically able to perform, or within a reasonable time to resume, the usual duties of his livelihood" as provided by the "physical requirements" clause of the policy. In support of its defense, CUNA introduced evidence to show that a federal administrative law judge previously had determined in 1980 that Captain Norman had been disabled within the meaning of the Social Security Act since February 1979. The Act as applied March 6, 1980 provided:

> The term "disability" means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1). At the hearing before the federal judge, Captain Norman had testified that his physical condition com-

pelled him to abandon several attempts at self-employment ventures following his retirement from the navy. In a letter dated March 18, 1980, Captain Norman's attending physician reported that his patient suffered recurrent cancer of the prostate and that the life expectancy of 90 percent of such patients was less than five years.

Plaintiff testified that her husband had earned no money in his self-employment ventures but that the pension he had received from the navy had been sufficient for their support. In a letter opinion addressed to the "physical requirements" clause of the CUNA policy, the trial court found that "from 1975 until the date of this loan on August 20, 1980, Captain Norman's 'livelihood' consisted of being a retired naval officer" and that he "was capable of fully performing the 'usual duties' of being a retiree". Based upon that finding, the trial court entered judgment against CUNA for $11,191.77, plus costs and attorney's fees in the sum of $2,797.94.

On appeal, CUNA argues that the trial judge's conclusion that Captain Norman met the physical-requirements test of the CUNA policy is contrary to the evidence that the decedent had satisfied the disability definition of the Social Security Act. That argument presupposes that the two standards are the same and that the trial judge construed the language of the CUNA policy to mean something different. Thus, CUNA tacitly acknowledges that its policy language is ambiguous.

The rule of construction consistently applied in this Commonwealth is that ambiguous language in insurance policies must be interpreted most strongly against the scrivener and in favor of the insured. *See, e.g., Hill* v. *State Farm Mutual Auto. Ins.*, 237 Va. 148, 153, 375 S.E.2d 727, 730 (1989) (this day decided); *United Services Auto. Assoc.* v. *Webb*, 235 Va. 655, 658, 369 S.E.2d 196, 198 (1988); *Caldwell* v. *Transportation Co.*, 234 Va. 639, 642-43, 364 S.E.2d 1, 3 (1988); *St. Paul Ins.* v. *Nusbaum & Co.*, 227 Va. 407, 411-12, 316 S.E.2d 734, 736 (1984). Here, the dispute springs principally from construction of the word "livelihood". In effect, CUNA asks us to interpret the word, considering the context in which it is employed in its policy, to mean gainful employment, the "usual duties" of which a credit union member must be "physically able to perform, or . . . to resume" to qualify for coverage. The dictionary definition of "livelihood" is not so

restrictive: "means of support or subsistence . . . ." Webster's New International Dictionary (3d ed. 1971).

Plaintiff testified that, following her husband's retirement from the navy, his pension was sufficient for their support. Her evidence satisfies the dictionary definition of "livelihood". In keeping with settled rules of construction, the trial judge applied that definition in favor of coverage, and we cannot say that he misconstrued the ambiguous language CUNA chose to employ.

In an alternative argument, CUNA contends that it is not liable because, it says, its policy with the credit union had lapsed. In a letter dated January 1, 1981, the credit union advised its members that, effective March 1, 1981, it would continue to pay the premiums on the CUNA policy for loans closed before that date but that credit life insurance coverage on "all new or refinanced loans" closed after that date would be at the option and expense of the borrower. Quoting from Black's Law Dictionary (5th ed. 1979), CUNA says that to "finance" means "to supply with funds through the issuance of stocks, bonds, notes, or mortgages" and that to "refinance" means "to finance again or anew". CUNA insists that the writing memorializing the August 5, 1981 agreement "clearly constitutes a 'note' "; that the agreement thus "constituted a refinanced loan" or "a new loan excluded from coverage under the CUNA policy after March 1, 1981"; and that, because Captain Norman had paid no premiums, CUNA owed no coverage on his loan.

We disagree. The business of financing and refinancing is governed by the relevant provisions of the Commercial Code. Unlike Captain Norman's promissory note executed August 20, 1980, the writing dated August 5, 1981 is not a "note" as defined in Code § 8.3-104(2)(d). Nor is it an "instrument" within the contemplation of Code § 8.3-805. Moreover, the fair import of the credit union's January 1, 1981 letter to its members was that Captain Norman's loan, like all other loans closed before March 1, 1981, had been "grandfathered" against discontinuance of the group credit life insurance coverage provided by the credit union's contract with CUNA. Accordingly, we uphold the trial judge's finding that the August 5, 1981 transaction was merely a consensual postponement of the due date of an existing debt rather than a new or refinanced loan as CUNA urges.

In a third assignment of error, CUNA challenges the award of attorney's fees. The trial judge rested that award upon a finding

"that there was no reasonable basis for the Defendant to deny coverage in this case and that in doing so they [sic] have not acted in good faith."

 "Ordinarily, in the absence of a statutory or contractual provision to the contrary, attorneys' fees are not recoverable by the prevailing litigant." *Gilmore* v. *Basic Industries*, 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987). Here, the trial judge invoked former Code § 38.1-32.1 (now, § 38.2-209) which provided:

> Notwithstanding any provision of law to the contrary, in any civil case in which an insured individual sues his insurer or his self-insurer to determine what coverage, if any, exists under his present policy or the extent to which his insurer is liable for compensating a covered loss, such individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the trial judge after verdict may award if it is determined by such trial judge in such case that the insurer has not in good faith either denied coverage or failed or refused to make payment to the insured under such policy.
>
> Nothing in this section shall be deemed to grant a right to bring an action against such insurance companies by an insured who would otherwise lack standing to bring action.

This statute is both punitive and remedial in nature. It is designed to punish an insurer guilty of bad faith in denying coverage or withholding payment and to reimburse an insured who has been compelled by the insurer's bad-faith conduct to incur the expense of litigation. Given the dual statutory goals, we think that, in evaluating the conduct of an insurer, courts should apply a reasonableness standard. A bad-faith analysis generally would require consideration of such questions as whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact.

We find no evidence of record to support the trial judge's conclusion that CUNA had not acted in good faith. The testimonial and documentary evidence CUNA adduced at trial shows that the insurer had made a thorough investigation of the facts and circumstances underlying plaintiff's claim. That evidence was relevant to the issue central to CUNA's defense, namely, that Captain Norman was not covered by the policy because he failed to meet the physical-requirements test at the time he received the proceeds of the loan from the credit union. The determination of that issue turned upon construction of the word "livelihood". That issue was a matter of first impression in this jurisdiction. *See Georgia Intern. Life Ins. Co.* v. *Harden*, 158 Ga. App. 450, 454-55, 280 S.E.2d 863, 866-67 (1981) (attorney's fees disallowed because doubtful meaning of "sickness" in credit disability insurance policy justified denial of coverage). Because we consider the issue of coverage reasonably debatable, we reject the finding of bad faith. *Cf. Swanston* v. *CUNA Mut. Ins. Soc.*, 636 P.2d 1368 (Kan. App. 1981).

Applying the reasonableness standard, we hold that the trial judge erred in awarding plaintiff attorney's fees. We will modify the judgment by reversing the award of attorney's fees and, on the judgment as modified, we will enter final judgment here.

*Affirmed in part, reversed in part, and final judgment.*