## CIRCUIT COURT OF LOUDOUN COUNTY

Chapman P. Gleason et al.

v.

Allstate Insurance Co.

May 4, 1997

Case No. (Law) 18212

BY JUDGE CARLETON PENN

This is an action under the "med-pay" provisions of an automobile insurance policy against the insurance company, Allstate. The issue was tried to a jury, and Plaintiffs prevailed.

Pursuant to the provisions of Code § 8.01-66.1(D), Plaintiffs seek to recover interest at the double rate therein mentioned and also reasonable attorney's fees and expenses. To entitle them to such recovery, "the judge of a court of proper jurisdiction" must find "that such denial, request, or failure to pay was not made in good faith." That is the issue now before the Court.

Cecelia Gleason, covered by said policy, suffered a "whip-lash" injury when the car she was driving was struck from behind. She later suffered neck pain and was referred by her family physician to Peter M. Daddio, a chiropractic physician, who had previously treated her. The accident occurred on January 6, 1994, and he commenced treating her on January 7, 1994.

As a result of a conversation with Diane E. Mollinedo, a claims representative of Allstate, Dr. Daddio wrote to her on March 16, 1994, distinguishing between previous treatment by him of Ms. Gleason and her then current diagnosis, the latter of which was "the direct result of the auto accident." He wrote:

Although both of these diagnoses require treatment in approximately the same area, they are definitely different diagnoses that occur from different types of injuries. (Plaintiff's Exhibit No. 5.)

By letter of April 12, 1994, Ms. Mollinedo wrote to Dr. Daddio (Plaintiff's Exhibit No. 15), transmitted a check "for an amount less than the billed charges." She wrote further:

> This Allstate policy provides benefits for reasonable and necessary expenses for medical, hospital, chiropractic, and other services incurred for injuries caused by an auto accident. We review all bills to ensure that the treatment and charges meet these requirements.

By letter of May 11, 1994 (Plaintiff's Exhibit No. 6), Daddio transmitted to Allstate a copy of the MRI report done on Ms. Gleason at the request of Allstate dated April 27, 1994.

Dr. Daddio wrote to Allstate under date of June 27, 1994 (Plaintiff's Exhibit No. 8), referring to Ms. Fears' letter of May 19, 1994. (That letter, Plaintiff's Exhibit No. 10, stated that Allstate regarded the findings of the MRI to show that the degenerative disc disease was not a condition caused by Ms. Gleason's accident-related injuries and denied payment for "additional treatment.") He stated to Ms. Fears that "due to the auto accident, this condition [degenerative disc disease] was exacerbated, and due to the accident, the patient is experiencing severe headaches, numbness and tingling, severe spasm and decreased range of motion in the cervical spine. These symptoms were not present prior to the accident. Ms. Gleason was referred to Dr. Robert Kurtzke on May 26, 1994, and a copy of his findings are enclosed." (Dr. Kurtzke is a neurologist, and it was his impression that "Ms. Gleason's history and exam are most suggestive of cervical strain from a whiplash injury of the car accident. ...") A later (June 15, 1994) electromyography and Nerve Condition Study done by him was normal.

Ms. Fears by her letter to Daddio of May 19, 1994, also told him that if he did not feel the decision not to make further payments was not correct, "you will need to submit documented medical literature, such as published medical reports and studies that substantiates a medical necessity for this additional treatment given the diagnosis." In the same letter she stated: "The treatment she is currently receiving exceeds frequency and duration guidelines for the indicated diagnosis for her accident-related injuries."

The evidence showed that the "frequency and duration guidelines" were computer-generated from a database of medical data including information from Blue-Cross/Blue Shield, Medicare, and other health-care providers. A representative of Allstate testified in this ancillary proceeding that their claims

adjusters had medical knowledge, access to medical journals, classes in cervical strain and muscle spasm, but no medical training.

Plaintiff argues that here a layperson, not a medical professional, made the decision to stop payment for treatments deemed by a doctor of chiropractic to be indicated for Gleason despite the results of an MRI and a neurological report by a neurologist. Further, that by adhering to computer-generated guidelines and not appropriately evaluating and considering the medical evidence in this particular case, Allstate has been guilty of bad faith. Plaintiff suggests that an indication of the bad faith of Allstate is that it did not seek the services of a medical consultant or request an independent medical examination, leaving the final decision to a layperson.

It is unnecessary that the Court decide that issue. Dr. Daddio wrote in his June 27, 1994, letter:

> I also believe that stress is a contributing factor in this case. Ms. Gleason's daughter was diagnosed with Juvenile Rheumatoid Arthritis on March 1, 1994. I feel that this unfortunate occurrence has acted as a setback and/or exacerbating factor in the recovery for Ms. Gleason's injury. In addition to the symptoms she herself has been experiencing, she also has had to deal with multiple testing of her daughter's condition and awaiting the possible results of these test[], which has led to sleepless nights and severe stress. As you can see from her notes that much of the severe problems she was experiencing when her condition worsened coincide with the medical problems of her daughter.

Dr. Daddio was Plaintiff's witness. They are bound by his testimony. Allstate would have to speculate concerning the extent to which additional treatment would be required because of the intervening stress to which Daddio refers. It is not required to do so, and reasonable minds could differ as to the actions of Allstate in declining to make the payments in controversy. Allstate did not violate the "reasonableness standard" enunciated in *CUNA Mutual Ins. v. Norman*, 237 Va. 33, 375 S.E.2d 724 (1989).

The § 8.01-66.1(D) claim is denied.