UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TRIDENT PERFUSION ASSOCIATES,
INCORPORATED,
<u>Plaintiff-Appellant,</u>

v.                                                                              No. 96-2242

JEFRI W. LESNOFF; MICHAEL R.
STUBBS; G. MARTIN DOWNING,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
B. Waugh Crigler, Magistrate Judge.
(CA-95-34-H)

Argued: June 2, 1997

Decided: August 28, 1997

Before WIDENER,* WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Phyllis J. Towzey, STEIN, FORD, SCHAAF & TOW-
ZEY, L.L.P., St. Petersburg, Florida, for Appellant. Mark Dudley

_____

*Judge Widener heard oral argument but did not participate in the con-
sideration of this case due to illness. The opinion is filed by a quorum
of the panel pursuant to 28 U.S.C. § 46(d).

Obenshain, WHARTON, ALDHIZER & WEAVER, P.L.C., Harrisonburg, Virginia, for Appellee Stubbs; Russell Ambrose Fowler, FOWLER, GRIFFIN, COYNE & COYNE, P.C., Winchester, Virginia, for Appellees Lesnoff and Downing. **ON BRIEF:** Henry A. Stein, STEIN, FORD, SCHAAF & TOWZEY, L.L.P., St. Petersburg, Florida, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Trident Perfusion Associates, Incorporated (Trident), brought suit pursuant to the Virginia Trade Secrets Act (the Act), see Va. Code Ann. §§ 59.1-336 to -343 (Michie 1992), against three former employees. Specifically, Trident contended that Jefri Lesnoff, Michael Stubbs, and Martin Downing (collectively "Defendants") provided Advance Perfusion Care, Incorporated (APC), with Trident's trade secrets. After a bench trial, a magistrate judge entered judgment in favor of Defendants.[1] Finding that Trident brought its lawsuit in bad faith, the district court also awarded Defendants attorneys' fees. On appeal, Trident argues only that the district court abused its discretion in awarding Defendants attorneys' fees under the Act. Finding no error, we affirm.

I.

Trident provides perfusion services[2] at numerous hospitals in sev-

_____

[1] The parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C.A. § 636(c)(1) (West 1993). For convenience, we refer to the magistrate judge as "the district court" throughout the opinion.
[2] "Perfusion services" involve both the operation of heart-lung machines used during cardiac surgery and the provision of supplies for that equipment.

2

eral states, including Virginia. With the help of Lesnoff, Trident obtained a lucrative account with Winchester Medical Center (Winchester) in 1989.**3** Defendants, all certified perfusionists, were employed by Trident to service the Winchester account. As a result, Defendants had access to the procedures and protocols, fee schedule, and "tubing" specifications used by Trident at Winchester.**4** Each Defendant executed an employment agreement with Trident that expressly prohibited him from disclosing any of Trident's trade secrets.**5**

In November of 1994, Winchester terminated its perfusion contract with Trident. Two weeks later, Winchester contracted with APC. On January 6, 1995, Trident informed Defendants that their employment would be terminated on February 9, 1995. Several weeks after receiving the notices terminating their employment with Trident, Lesnoff and Stubbs accepted employment with APC. Although offered employment with APC, Downing decided to seek employment elsewhere.

According to Trident, Defendants, while employed by Trident, provided APC with the procedures and protocols, fee schedule, and tubing specifications used by Trident at Winchester. Believing that Defendants helped APC obtain the Winchester account, Trident commenced this diversity action. Trident's complaint alleged claims for (1) breach of contract;**6** (2) tortious interference with prospective business relations; (3) breach of fiduciary duty; (4) conspiracy; and (5) violation of the Virginia Trade Secrets Act. After dismissing Trident's tortious interference and conspiracy claims, the district court tried the remaining claims without a jury.

During the bench trial no evidence was introduced showing any

---

**3** Trident earned more than one million dollars in annual revenues from the Winchester account.

**4** "Tubing" is the primary disposable used by perfusionists. Tubing is specifically designed and constructed based upon the placement of the operating room equipment at the particular hospital.
**5** The agreement also contained a non-competition provision.
**6** Trident contends that Defendants violated the confidentiality and non-competition provisions in their employment agreements.

3

contact or communications between APC and either Stubbs or Downing until almost two months after Winchester had contracted with APC. Although Lesnoff admitted that APC contacted him regarding a job in Dayton, Ohio, no evidence was introduced showing that he had any contact with APC regarding the Winchester account until almost two months after Winchester had contracted with APC. In addition, the district court found that Trident's procedures and protocols, fee schedule, and tubing specifications were"matters of common knowledge" and, therefore, not protectable trade secrets. (J.A. at 1425-27.) At the close of evidence, the district court entered judgment in favor of Defendants on all counts.

After judgment was entered, Defendants requested that they be awarded attorneys' fees pursuant to the Act. The Act provides for an award of attorneys' fees to a prevailing defendant where it can be shown that the plaintiff made the claim of misappropriation in "bad faith," and to a prevailing plaintiff where it can be shown that the defendant's misappropriation was "willful and malicious." See Va. Code Ann. § 59.1-338.1 (Michie 1992). In construing the Act, the district court concluded that "bad faith" was to be determined by an objective reasonableness standard. Finding that"there was no evidence to support [Trident's] claims," (J.A. at 1445), the district court determined that Trident had no objective basis for thinking that it could prevail under the Act. As a result, the district court held that Trident made its claim of misappropriation in "bad faith" and awarded Defendants attorneys' fees. This appeal followed.

II.

On appeal, Trident argues only that the district court erred in awarding Defendants attorneys' fees pursuant to the Act. We review the district court's decision to award attorneys' fees for abuse of discretion. See Pierce v. Underwood, 487 U.S. 552, 557-63 (1988). A district court abuses its discretion by applying an incorrect legal standard or by resting its decision on a clearly erroneous finding of material fact. On appeal, Trident argues that the district court did both. We review Trident's arguments in turn.

A.

Trident first argues that the district court erred in determining "bad faith" by an objective reasonableness standard. Trident contends that

4

the "[c]ommon usage of the term `bad faith' . . . implies at least some degree of subjectivity." (Appellant's Br. at 17.) Thus, according to Trident, a finding of "bad faith" requires clear evidence that the action was maintained vexatiously, wantonly, or for some other improper purpose. Whether "bad faith" should be determined by an objective or subjective standard is a legal question. On appeal, we review the district court's determination of Virginia law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

Regrettably, the Virginia General Assembly did not define the term "bad faith" under the Act. Trident would have us adopt the Maryland Court of Appeals' construction of the term "bad faith." (Appellant's Br. at 19 (citing Optic Graphics, Inc. v. Agee , 591 A.2d 578, 588 (Md. 1991) (requiring that action have been maintained "`vexatiously, wantonly or for oppressive reasons'" (quoting Needle v. White, 568 A.2d 856, 861 (Md. Ct. Spec. App. 1990))))).) However, in this diversity case Virginia law governs, and Virginia Supreme Court decisions construing the term "bad faith" in similar contexts have focused on objective reasonableness rather than on subjective intent. For example, in CUNA Mut. Ins. Soc'y v. Norman, 375 S.E.2d 724 (Va. 1989), the Virginia Supreme Court construed the term "bad faith" in the context of awarding attorneys' fees in insurance disputes and held that "in evaluating . . . an insurer['s bad faith], courts should apply a reasonableness standard." Id. at 726-27. Similarly, in State Farm Mut. Auto. Ins. Co. v. Floyd, 366 S.E.2d 93 (Va. 1988), the Virginia Supreme Court expressly rejected State Farm's argument that"bad faith" required a showing of "fraud, deceit, dishonesty, malice, or ill-will." Id. at 97.

Virginia courts have also construed the term "good faith." By statute, a district court may impose sanctions upon a plaintiff whose complaint was not filed in "good faith." See Va. Code Ann. § 8.01-271.1 (Michie 1992). According to the Virginia Supreme Court, determining whether a complaint was filed in "good faith" is governed by "an objective standard of reasonableness." See County of Prince William v. Rau, 391 S.E.2d 290, 292 (Va. 1990). As a result, a plaintiff has acted in "good faith" if "after reasonable inquiry," he could have formed a reasonable belief that his lawsuit "was warranted by existing law," Nedrich v. Jones, 429 S.E.2d 201, 204 (Va. 1993), and in "bad

faith" if his "claim had no chance of success under existing law," Tullidge v. Board of Supervisors, 391 S.E.2d 288, 290 (Va. 1990).

Although the term "bad faith" has not been construed by any Virginia court in the context of the attorneys' fees provision of the Act, we see no reason to believe that the Virginia Supreme Court would abandon its well-established practice of determining "bad faith" by an objective reasonableness standard.[7] As a result, the district court did not abuse its discretion by applying an incorrect legal standard. Therefore, Trident's appeal turns on whether the district court rested its decision on a clearly erroneous finding of material fact.

### B.

According to Trident, the district court's finding that it had no objective basis for believing that it could prevail under the Act was erroneous. We have reviewed the record, briefs, and pertinent case law in this matter, and we have had the benefit of oral argument. Our review persuades us that the district court's factual findings were not clearly erroneous. See Fed. R. Civ. P. 52(a) (findings of fact shall not be set aside unless clearly erroneous). Based on those findings, we agree with the district court's assessment that Trident's allegations had no chance of success under the Act. Accordingly, the district court did not abuse its discretion in awarding Defendants attorneys' fees.

_____

[7] Trident also argues that

> a plain reading of the statute suggests that since a showing of "willful and malicious misappropriation" must be shown for a prevailing plaintiff to recover fees against the defendant, fairness would dictate that the legislature intended the same degree of improper purpose on the part of a plaintiff for the prevailing defendant to recover fees.

(Appellant's Br. at 17.) We disagree. If anything, the fact that the Virginia General Assembly used two different standards suggests that "bad faith" is not synonymous with "willful and malicious."

6

III.

For the reasons stated, the district court's decision to award Defendants attorneys' fees is affirmed.

<u>AFFIRMED</u>

7