**CAROLINA CASUALTY INS. CO. Plaintiff,**

v.

**DRAPER & GOLDBERG, PLLC, Defendant.**

**No. 1:03CV1346JCC.**

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 19, 2004.

Richard Albert Simpson, Ross Dixon & Bell LLP, William J. Carter, Carr Maloney PC, Washington, DC, for Plaintiff.

Christine Michele McAnney, Venable LLP, Vienna, VA, for Defendant.

### *MEMORANDUM OPINION*

CACHERIS, District Judge.

This matter comes before the Court on Defendant's motion for attorneys' fees pursuant to Virginia Code § 38.2–209. For the reasons stated below, the Court will deny Defendant's motion.

## I. Background

Plaintiff Carolina Casualty Company ("Carolina") is an insurance company. It filed suit on October 23, 2003 for rescission of a professional liability insurance policy it issued to the Defendant law firm, Draper & Goldberg, PLLC ("D & G"). D & G is a law firm that specializes in residential foreclosures. As such, the firm and its lawyers are routinely named as defendants in ground rent suits, tax sale suits, and quiet title suits. These types of suits are filed against attorneys and non-attorneys alike.

On December 23, 2002, D & G applied for professional liability insurance coverage from Carolina. In the application, Question 16 asked:

Has any professional liability claim been made against the Applicant Firm, or any predecessor in business, or any of the past or present lawyers in the firm, during the past five (5) years?

(Pl.'s Mot. Summ. J., Ex. 1 at 3.)

D & G answered this question in the affirmative. (*Id.*) Question 17 asked:

After inquiry, does the Applicant Firm or any lawyer in the Applicant Firm know of any circumstances, acts, errors or omissions that could result in a professional liability claim against the Applicant Firm or any predecessor in business, or any of the past or present lawyers in the Applicant Firm?

(*Id.*)

D & G answered "No" to this question. (*Id.*) Having responded "Yes" to Question 16, D & G attached to its application five Claim/Incident Supplemental Forms. (Pl.'s Mot. Summ. J., Ex. 2.) In these forms, D & G identified four [1] professional

liability claims or suits during the last five years, in accordance with the information requested in Question 16.

Immediately above the signature line, the Application stated:

The undersigned, acting on behalf of the Applicant Firm and all persons proposed for this insurance, represents that all statements on or attached to this Proposal Form are true. The undersigned agrees that if any of the information supplied changes between the date of the Proposal Form and the effective date of the Policy applied for, the undersigned will immediately notify the insurer of such changes. In that event, the insurer shall have the right to withdraw or modify any outstanding quotation and/or authorization or agreement to bind the insurance.

(*Id.*)

On the basis of the Defendant's application, Carolina issued a policy to D & G for the period of December 20, 2002 to December 20, 2003. (Pl.'s Mot. Summ. J., Ex. 6, 15.) The underwriter manager responsible for evaluating the application on behalf of Carolina was Timothy Esbolt from Monitor Liability Managers, ("Monitor"). Section VIII of the policy provided:

The Proposal [the application] is the basis of this Policy and is incorporated in and constitutes a part of the Policy. A copy of the Proposal Form is attached hereto. Any materials submitted with the Proposal Form shall be maintained on file with the insurer and shall be deemed to be attached hereto, as if physically attached. It is agreed by the Insured that the statements in the Proposal are their representations, that

---

**1.** D & G actually listed five previous claims, but only four occurred during the five-year reporting period. D & G listed a claim by Specialized, Inc. of Virginia that was made on December 5, 1997 which was more than five years before the date of the application. (*See* Pl.'s Mot. Summ. J., Ex. 2.)

they are material and that this Policy is issued in reliance upon the truth of such representations.

(*Id.*)

In May and June of 2003, three parties asserted claims against D & G for liability. The first law suit, captioned *Patricia Weddle v. Option One Mortgage, et al.,* was filed in connection with a bankruptcy proceeding. (Pl.'s Mot. Summ. J., Ex. 7.) In this action, Weddle alleged, among other things, that D & G violated the Fair Debt Collection Practices Act, breached its fiduciary duty, and charged excessive fees. On May 22, 2003, counsel for D & G informed Monitor that Option One Mortgage Corporation had asserted a claim against D & G. (Pl.'s Mot. Summ. J., Ex. 8.) No lawsuit has been filed in connection with the claim by Option One.

The second lawsuit is captioned *Dave Shorb et al. v. Option One Mortgage Corp., et al.* (Pl.'s Mot. Summ. J., Ex. 10.) This matter is pending in the Circuit Court for Frederick County, Maryland. In that matter, four plaintiffs filed claims on their own behalf and sought class certification as representatives of a purported class concerning similar allegations against D & G as in the *Weddle* case. Both the *Weddle* and *Shorb* suits were class actions alleging damages exceeding $1,000,000. (Def.'s Mot. Summ. J. at 3.)

As a result of its investigations into these claims, Monitor, on behalf of Carolina, discovered 24 other lawsuits filed in the five years prior to the issuance of the policy. Carolina claims that had it known of these lawsuits it never would have issued the policy. After learning of these 24 actions, Monitor contacted D & G on September 11, 2003 and requested an explanation regarding its failure to report. (Pl.'s

Mot. Summ. J., Ex. 12.) On September 22, 2003, counsel for D & G responded stating that the firm had not reported these lawsuits because the application form did not define the term "professional liability claim" which appeared in Question 16. (Pl.'s Mot. Summ. J., Ex. 13.) In a subsequent letter, D & G elaborated on its position:

> We have explained D & G's subjective understanding of the scope of Question 16. The cases previously listed by D & G [in the application for insurance] were cases which it felt it needed to be reported to the carrier(s) for the carrier(s). to handle. In contrast, the claims set forth in the cases you have listed did not rise to level where D & G felt it necessary to have the carrier(s) assume responsibility for the case.

(Pl.'s Mot. Summ. J., Ex. 14.)

On October 23, 2003, Carolina filed suit seeking rescission of the policy it issued D & G, because of the misrepresentations by D & G concerning the number of lawsuits against it in the prior five years. Carolina later discovered that D & G had actually failed to disclose not 24 additional lawsuits, but "approximately 500 additional lawsuits." (Pl.'s Renewed Mot. Summ. J. at 5.) At all times, including during the pendency of the rescission action, Carolina provided D & G with a defense to the *Weddle* and *Shorb* suits, subject to a reservation of rights. (Pl.'s Opp'n Att'ys Fees at 2.)

In its Answer to the Complaint, D & G asserted a counterclaim against Carolina. The Counterclaim asked for a declaratory judgment stating that: (1) there is no legal basis for rescission of the policy; (2) D & G is entitled to the benefit of the extended reporting period provided by the policy;[2]

---

2. The Policy provided for an unlimited extended reporting period in exchange for a

payment of 0 of the annual premium due within 30 days of the effective date of any

and (3) D & G is entitled to legal fees and litigation expenses incurred in having to defend against the Complaint. On April 5, 2004, the Court denied the Carolina's Motion to Dismiss the D & G's Counterclaim.

On April 28, 2004, Carolina filed a Motion for Summary Judgment based on the 24 undisclosed lawsuits filed against D & G within the five-year period. On June 15, 2004, the Court denied the Carolina's Motion for Summary Judgment without prejudice. The Court reserved ruling on the issue of attorneys' fees until after or at the same time it determined whether the contract was subject to rescission.

On July 30, 2004, Carolina filed a Renewed Motion for Summary Judgment based on the approximately 500 undisclosed lawsuits filed against D & G within the five-year period. On August 5, 2004, D & G filed its own Motion for Summary Judgment. By Order entered September 9, 2004, the Court granted D & G's motion for summary judgment, holding that Question 16 was unambiguous and that D & G's response to Question 16 was true. On September 23, 2004, D & G filed a motion for attorneys' fees pursuant to Virginia Code § 38.2–209. On October 4, 2004, Carolina filed its appeal of the Court's September 9, 2004 judgment.

## II. Standard of Review

"Further necessary or proper relief based on a declaratory judgment or a decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

Pursuant to Virginia Code Ann. § 38.2–209:

in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy or bond or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

■ The statute "is both punitive and remedial in nature. It is designed to punish an insurer guilty of bad faith in denying coverage or withholding payment and to reimburse an insured who has been compelled by the insurer's bad-faith conduct to incur the expense of litigation." *CUNA Mutual Ins. Soc'y v. Norman*, 237 Va. 33, 38, 375 S.E.2d 724 (1989). When evaluating the conduct of an insurer for bad faith, courts should apply a "reasonableness standard" and consider:

(1) whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; (2) whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; (3) whether the evidence discovered reasonably supports a denial of liability; (4) whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and (5) whether the defense the insurer asserts at trial raises an issue of first

---

non-renewal of the Policy by Carolina. (Counter.¶ 4.) D & G purchased the extended reporting period under the Policy for any other claims first made and reported after the

expiration of the Policy, regarding any wrongful acts occurring prior to the end of the Policy. (Counter.¶ 11.)

impression or a reasonably debatable question of law or fact.

*Id.*

### III. Analysis

The issues presented are (1) whether filing an action for rescission of an insurance contract is a denial of coverage under Virginia Code § 38.2–209; (2) whether Carolina acted with bad faith when it sought to rescind the contract; and (3) whether the fees requested by D & G are reasonable.

### A. Denial of coverage

The first issue presented is whether filing an action for rescission of an insurance contract is a denial of coverage under Virginia Code § 38.2–209. D & G claims that the Complaint and Counterclaim which respectively sought a rescission of the Policy and a declaratory judgment that the Policy's coverage remained in effect, collectively created a "civil case in which the insured individual sue[d] his insurer to determine what coverage, if any exists under his present policy." (Def.'s Mot. Att'ys Fees at 3.) D & G also claims that since Carolina's Complaint acknowledged three pending claims against D & G, but still sought rescission of the policy, Carolina "effectively denied coverage of D & G's claim for defense and indemnification on the *Weddle* and *Shorb* claims." (*Id.*)

Carolina claims that the statute does not apply because D & G did not bring suit in the first instance, and the Counterclaim did not seek to determine what coverage was available under the Policy, but rather sought a declaration that rescission was not appropriate. (Pl.'s Opp'n Att'ys Fees at 2.) Finally, Carolina claims that it has not "denied coverage or failed or refused to make payment to the insured under the [P]olicy" since Carolina has provided D & G with a defense at all times, subject to a reservation of rights. (*Id.*) At oral arguments, D & G confirmed that Carolina has in fact provided D & G with a defense at all times.

■ There is a single unpublished opinion indicating that filing an action for rescission of an insurance policy is a denial of coverage under Virginia Code § 38.2–209. *See Jason's Enters., Inc. v. Gen. Accident Ins.,* 89 F.3d 828, 1996 WL 346515 (4th Cir.1996). However, it is unclear whether the insurer in that case defended the claim subject to a reservation of rights, or simply refused to defend the claim.

Since Carolina did provide D & G with a defense to the *Weddle* and *Shorb* claims, subject to a reservation of rights, the Court holds that Carolina did not deny D & G's claim within the meaning of Virginia Code § 38.2–209. However, even if the Court were to find that Carolina denied coverage under Virginia Code § 38.2–209, the Court would also have to find that Carolina acted in bad faith in order to award attorneys' fees.

### B. Bad faith

The second issue presented is whether Carolina acted in bad faith when it sought to rescind the insurance contract. To determine whether Carolina acted in bad faith, the Court will consider: (1) whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; (2) whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; (3) whether the evidence discovered reasonably supports a denial of liability; (4) whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and (5) whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable

question of law or fact. *See CUNA Mutual Ins. Soc'y*, 237 Va. at 38, 375 S.E.2d 724.

■ The first factor is whether reasonable minds could differ in the interpretation of Question 16.[3] By Order entered September 9, 2004, the Court ruled that the phrase "professional liability claim" in Question 16 unambiguously required the disclosure of only negligence claims made by clients of D & G. (*See* Mem. Op. at 14.) The Court based its decision on: (1) the dictionary definition of a "lawyer" as someone who gives legal advice and assistance to clients and represent clients in court or in other legal matters; (2) the interpretation of "professional liability claim" to mean claims resulting from a breach of professional duty, and in Virginia, an attorney owes a duty to those only with whom he is in privity of contract, i.e. his clients; and (3) the ruling in *Guidry v. Garrett*, 591 So.2d 806 (La.Ct.App.1991), that a malpractice claim against a doctor by a nonpatient was not a "professional liability claim." (*See* Mem. Op. at 14). The Court now rules that since Question 16 was unambiguous, reasonable minds could not differ in the interpretation of the Question.

The second and third factors to consider are whether Carolina made a reasonable investigation of the facts and circumstances underlying D & G's claim, and whether the evidence discovered reasonably supported the denial of liability. Carolina relies on the testimony of underwriting manager Timothy Esboldt and Carolina Vice President of Underwriting Randall Mrozowicz to show that it made a reasonable investigation regarding D & G's claim. (Pl.'s Mot. Summ. J., Ex. 15, 17; Dep. of Esboldt at 26, 81; Dep. of

Randal Mrozowicz at 25–26). Both Esboldt and Mrozowicz testified that Carolina would not have issued the policy to D & G had Carolina known that twenty-nine claims had been made against D & G in the preceding five years, regardless of the magnitude or specific nature of the claims. (*Id.*) In addition, before seeking rescission, Carolina offered D & G an opportunity to correct its understanding of the facts and to explain why the additional claims were not disclosed. (Pl.'s Mot. Summ. J., Ex. 12).

D & G argues that Carolina did not conduct a reasonable investigation because Carolina did not investigate the undisclosed claims under its own underwriting standards, but rather decided to rescind the policy without reviewing the severity or frequency of the undisclosed claims. D & G also argues that Carolina acted in bad faith by delaying to notify D & G of the decision to rescind the policy and failing to provide to Carolina underwriters D & G's September 11, 2003 letter explaining why D & G did not disclose the additional claims.

■ Under Virginia law, an insurer may rescind an insurance policy because of misrepresentations in the insurance application only in certain circumstances. *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 781 (4th Cir.1995)(*aff'g* 826 F.Supp. 155 (E.D.Va.1993)). *Jacobson* provides in pertinent part:

No statement in an application or in any affidavit made before or after loss under the policy shall bar a recovery upon a policy of insurance unless it is clearly proved that such answer or statement

---

**3.** *CUNA Mutual Ins. Soc'y* instructs that the first factor is whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions. 237 Va. at 38, 375 S.E.2d 724 (1989). However, given that the issue in this case was whether Question 16 on the insurance application was ambiguous, the Court will consider whether reasonable minds could differ in the interpretation of Question 16.

was material to the risk when assumed and was untrue.

*Jacobson,* 48 F.3d at 780.

■ Rescission of the Carolina policy would have been appropriate only if Carolina clearly proved that a statement in D & G's application for insurance was both (1) material to the risk assumed and (2) untrue. *Jacobson,* 826 F.Supp. at 159. A fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy. *Harrell v. N.C. Mut. Life Ins. Co.,* 215 Va. 829, 213 S.E.2d 792, 795 (1975). Unlike D & G suggests, Carolina would not have been required to prove that the undisclosed claims had merit or indicated any increased risk in order to rescind the Policy.

As set forth in Carolina's underwriting guidelines, "[a] firm that has a frequency problem causes the carrier to incur both administrative and legal expenses and is more prone to eventually generate a claim that will result in a loss payment." Pl.'s Reply to Def.'s Opp'n Mot. Summ. J. at 4–5 (citing Carolina Casualty Insurance Company's Underwriting Manual for Lawyers Professional Liability Insurance at 22). Based on the testimony of Esboldt and Mrozowicz and the cited underwriting guideline, the Court finds that Carolina's albeit short investigation was reasonable and that the evidence discovered reasonably supported the decision to seek rescission. The investigation provided sufficient evidence for Carolina to determine that had it known about the undisclosed claims, it would not have issued the policy. Accordingly, Carolina decided to seek rescission of the Policy, while still providing D & G with a defense to the *Weddle* and *Shorb* suits.

The fourth and fifth factors are whether it appears that Carolina's refusal to pay was used merely as a tool in settlement negotiations, and whether the defense Carolina asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact. D & G argues that these factors do not apply since D & G's claim concerned not a "failure to pay" a particular claim, but instead a denial of all coverage, and because this matter never proceeded to trial. (Def.'s Mot. Att'ys Fees at 6, n. 1). This case is unusual in that it arose upon a suit brought by the insurer seeking rescission of the insurance policy. Given its procedural posture, the test established in *CUNA Mutual Ins. Soc'y* does not apply perfectly. However, the factors are still relevant and the Court will apply them.

D & G has not alleged that Carolina's attempts to rescind the policy was used as a tool in settlement negotiations. Accordingly, the fourth factor indicates that Carolina did not act in bad faith.

The meaning of the phrase "professional liability claims" was an issue of first impression. Even though the Court ultimately concluded that the phrase was unambiguous, it was still an issue of first impression, so the fifth factor also indicates that Carolina did not act in bad faith.

Finally, the fact that Carolina provided a defense under a reservation of rights indicates that Carolina did act in good faith. D & G cites no case where the insurer had defended the claim under a reservation of rights, and the insured subsequently was awarded attorneys' fees under Virginia Code § 38.2–209. D & G's reliance on *Emerson v. American Bankers Ins. Co. of Fl.,* 223 Ill.App.3d 929, 166 Ill.Dec. 293, 585 N.E.2d 1315 (1992), is misplaced. In that case, the Illinois court found the "jury could easily have concluded that the alleged 'misrepresentation' was merely a misunderstanding by the insureds as to

what information [the insurer] wanted, that it was of a minor nature, and that it was utilized by [the insurer] as a pretext for refusing to pay the full value of the insurance contract and offering an unreasonably low settlement." *Id.* at 1323. However, in the instant case, the alleged misrepresentation was not of a minor nature and there is no evidence that Carolina used it as a pretext for refusing to provide coverage under the Policy.

Applying the factors, although reasonable minds could not differ in the interpretation of Question 16, the Court finds that Carolina did conduct a reasonable investigation, the evidence discovered reasonably supported the decision to seek rescission, Carolina's attempt to rescind was not used as a tool in settlement negotiations, and the meaning of "professional liability claims" was an issue of first impression. Accordingly, Carolina did not act with bad faith, and the Court will deny D & G's motion for attorneys' fees.

## C. Reasonableness of attorneys' fees requested

Since the Court has determined that Carolina did not deny D & G's claim and did not act in bad faith, the Court does not address the reasonableness of the fees requested.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion for Attorneys' Fees. An appropriate Order will issue.