STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

v.

BRIAN H. FLOYD

Record No. 841568

March 4, 1988

Present: All the Justices

*James W. Morris, III (John M. Claytor; Carrie L. Camp; Browder, Russell, Morris & Butcher*, on briefs), for appellant.
*Francis McQ. Lawrence (St. John, Bowling, Payne & Lawrence*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This is an appeal of a judgment obtained by an insured against his insurer, based on the insurer's "bad faith" in failing to settle an underlying tort case within policy limits. The earlier tort action had resulted in a judgment against the insured in excess of the policy limits, and the insured sued here for the excess. In this appeal, we examine the nature of "bad faith" and the standard of proof by which it must be shown.

## A. PROCEEDINGS

Deborah Ann Jones sued Brian H. Floyd in the Circuit Court of Louisa County for injuries sustained in an automobile collision. After a jury trial, she received a verdict for $100,000, upon which the court entered final judgment. We denied an appeal.

Floyd was covered by an insurance policy with State Farm Mutual Automobile Insurance Company, which had policy limits of $50,000 for bodily injury and $5,000 for property damage. State Farm paid its policy limits on the Jones judgment, and Floyd paid the balance. Floyd then brought this action against State Farm in

the Circuit Court of Albemarle County, alleging that State Farm had had an opportunity to settle the earlier *Jones* v. *Floyd* case within the policy limits and that it had been guilty of bad faith in failing to do so. At a jury trial, Floyd received a verdict against State Farm for $46,393.40, representing the excess over the policy limits Floyd had paid on the Jones judgment, with interest. We granted State Farm an appeal.

## B.  FACTS

The automobile collision occurred at 1:50 a.m., May 29, 1979. Deborah Ann Jones, 22 years of age, was driving south on a two-lane highway in Louisa County, returning from Washington National Airport where she had taken a friend to meet a flight. She was alone in her car. Brian Floyd was a senior at Woodberry Forest School. He was driving north on the same road, returning from a graduation-eve trip to Charlottesville. He had three other students as passengers. The two cars collided head-on and Miss Jones sustained serious and permanent injuries. She had no recollection of the collision. Floyd and Steve Herman, his front-seat passenger, recalled the circumstances; the two rear-seat passengers did not. There was some indication in State Farm's file that the boys had been drinking, but this never came into evidence.

The crucial issue in the case was whether the Jones car, the Floyd car, or both, were in the wrong lane at the time of impact. On this point, Floyd was adamant. He testified that he had been in his proper lane at all times; that as the Jones car approached, he saw it cross the centerline into his lane; and that he swerved to the right in an unsuccessful effort to avoid a collision. He steadfastly maintained this description of events in an accident report he made to the police, in his oral statement to his parents, in a signed statement given to State Farm, in a statement to the attorneys engaged by State Farm to defend him, in pretrial depositions, at the trial of the tort case, in pretrial depositions preceding the trial of the bad faith case, and at the trial of the bad faith case. He told counsel in the tort case that he did not want Miss Jones to be paid anything by way of settlement because she was solely at fault. Herman, Floyd's front seat passenger, corroborated Floyd's account in a statement given to counsel in preparation for trial of the tort case.

State Farm began its investigation of the accident on May 29, 1979, and concluded that liability was doubtful. When the tort

action was filed in August 1980, State Farm retained the law firm of Somerville, Moore and Joyner of Orange, Virginia, to defend the case. Atwell Somerville, an attorney with 33 years experience, was lead counsel, assisted by his son, Frank Somerville, who had been in practice for about 15 months. Because the *ad damnum* clause exceeded the policy limits, State Farm wrote to the Floyds, advising them of the policy limits, of their possible personal exposure to the excess, and of their right to retain personal counsel.

Floyd's father, a Richmond physician, consulted a Maryland attorney experienced in the trial of personal injury cases who reviewed the details of the case and concluded that if a verdict were returned against Floyd, it would, in his opinion, be within the policy limits. As a result, the Floyds decided not to retain personal counsel.

The Somervilles conducted an independent investigation of the case which included full pretrial discovery. They located Trooper J.E. Thomas of the Virginia State Police, who had arrived at the scene soon after the accident, but who had since been transferred to another area of the state. The trooper had not charged either driver with any traffic infractions, had taken no photographs, made no measurements, and had not noted the location of any debris which might have shed light on the point of impact. He did, however, find a series of "gouge" or "divot" marks leading from a point between the two center lines of the highway, crossing the northbound lane, and extending to the place where the Floyd car came to rest at the easterly edge of the pavement. The trooper concluded from this that the Floyd car had crossed the centerline.

Atwell Somerville wrote to State Farm on February 13, 1981, telling the insurer that the trooper would be permitted to describe at trial the marks he found on the highway, but would not be permitted to state his conclusions nor could he testify as to when the marks might have been made on the road. Because the jury would have to weigh the trooper's testimony against the positive testimony of the only two eyewitnesses, Somerville believed that the chances for a defendant's verdict were "very good," and that the court should sustain a motion to strike. He added that a plaintiff's verdict was a "possibility," but in that event he would expect it to fall within the range of $15,000 to $35,000. Somerville concluded his letter: "This evaluation is based on all of the evidence presently available to us and our experience in trying cases in this part of Virginia for a period of over thirty years . . . ."

State Farm's claims officers made their own evaluation of the case before trial, and decided to take a "no liability" position, reserving a settlement value of $10,000 to $15,000. Plaintiff's counsel made a settlement demand of $49,500 in February 1981, but the Somervilles made no specific response. Frank Somerville had advised plaintiff's counsel at the time of pretrial depositions that the defense was "not going to settle."

On the morning of trial, the recollection of Herman, Floyd's front-seat passenger, began to seem increasingly uncertain. The Somervilles, concluding that his testimony might prove more harmful than helpful, released him. He left the courtroom and did not testify. The jury was unaware of his earlier statement, of his change of position, or of his absence.

At the luncheon recess, plaintiff's counsel advised Atwell Somerville that the plaintiff would accept $45,000 in settlement. Mr. Somerville responded that he "could only recommend $15,000." Neither Floyd nor his parents were ever advised of the plaintiff's two settlement offers. The jury returned a verdict against Floyd in the amount of $100,000, on which the court entered judgment.

The trial of the "bad faith" case against State Farm took place in Albemarle County on June 26-29, 1984. Floyd testified that he would not have wanted to accept either of the plaintiff's two settlement offers if he had known about them, because he was opposed to any settlement. He now thought, however, that his counsel had made him overconfident. The original plaintiff's counsel, Floyd's parents, and two experienced trial lawyers testified in Floyd's case. The lawyer witnesses testified that the tort case had substantial settlement value. State Farm moved to strike the evidence on the ground that the evidence was insufficient to establish "bad faith" under the rule in *Aetna* v. *Price*, 206 Va. 749, 146 S.E.2d 220 (1966). The court overruled the motion and State Farm called nine witnesses in its defense, including other experienced trial lawyers as experts. They testified that State Farm's decision to defend the tort case was reasonable.

Over State Farm's objection, the trial court instructed the jury that the plaintiff had the burden of proving bad faith by a preponderance of the evidence. State Farm urged adoption of a "clear and convincing evidence" standard. The court also, over State Farm's objection, granted the following instruction on the subject of "bad faith":

Taking into consideration a relationship of confidence and trust created between the insurer and insured as a result of their insurance contract, which imposes upon the insurer the duty to deal fairly and honestly with the insured in the handling and disposition of the claim against the insured, bad faith is the failure to deal fairly and honestly with the insured in the handling and disposition of the claim against the insured covered by the policy of insurance, having both its own and the insured's interest in mind.

## C. "BAD FAITH"

The instruction granted above was adopted by the court after considering several alternatives offered by counsel. Floyd tendered an instruction defining bad faith as "intentional disregard of the insured's interest." State Farm offered alternatives variously defining bad faith as (1) acting fraudulently, or with intent to mislead, relied upon by the insured to his detriment; (2) an intent to defraud, a design to mislead or deceive, actual malice or wanton or oppressive behavior amounting to criminal indifference; (3) dishonest purpose, conscious wrongdoing, breach of a known duty with an ulterior motive or ill will; and (4) intentional disregard of the insured's financial interest. Each of these alternatives was supported by authority from other jurisdictions.

State Farm objected at trial, and argues on appeal, that the standard of "fairness" and "honesty" incorporated into the court's instruction is unlimited and subjective. Few persons can agree, State Farm argues, with regard to a given set of circumstances, where the outward limit of "fairness" has been reached, and the instruction offered no help. The term can be defined only by the emotional reactions of each individual juror. State Farm points to the elasticity of the term as applied in the present case: counsel for Floyd, in summation, equated "unfairness" with "benign neglect." The court refused State Farm's request that the jury be instructed that "benign neglect" was not "bad faith." Yet the parties were in agreement that negligence was not "bad faith," and the jury had earlier been so instructed.

There was no evidence that the Somervilles or any State Farm personnel acted dishonestly, fraudulently, deceitfully, or with any malice or ill-will. Counsel for Floyd conceded in summation: "This case is not . . . an accusation against State Farm that has any taint of evil wrongdoing or any taint of morally reprehensible

conduct . . . . The Judge has given you the instructions, he's told you that its a question of fairness . . . it's not the accusation of a moral type we are making here . . . ." Thus, the definition of "bad faith" was crucial to the correctness of the court's decision overruling State Farm's motion to strike. If the "fairness" criterion adopted by the court is the proper measure of "bad faith" in actions of this kind, then, arguably, Floyd's case made out an issue of fact for jury determination. If, on the other hand, Floyd was required to show fraud, deceit, malice, ill-will, or an intentional disregard of his interests by the insurer, he failed entirely to do so, as his counsel implicitly conceded in summation.

■ Our analysis begins with *Aetna* v. *Price*, 206 Va. 749, 146 S.E.2d 220 (1966). There, we reversed a judgment a physician had obtained against his insurer for the amount in excess of his policy limits that he had been compelled to pay a plaintiff in a medical malpractice case. After a detailed review of the evidence and the authorities, we adopted the view that, in a proper case, an insured may recover from an insurer for an excess judgment against the insured for failure to settle within policy limits, where the failure to settle was the result of the insurer's "bad faith." We refused to apply a negligence rule in such cases. Because the evidence in *Price* made out a jury issue on the question of negligence, but made no showing whatever of "bad faith" on the part of the insurer, we reversed and entered final judgment here. *Id.* at 764-65, 146 S.E.2d at 230.

In *Price*, we observed that because the insurer has control of the defense, ordinarily including the right to negotiate settlement at its discretion, "a relationship of confidence and trust is created between the insurer and the insured which imposes upon the insurer the duty to deal fairly with the insured in the handling and disposition of any claim covered by the policy." *Id.* at 760-61, 146 S.E.2d at 227-28. That language, somewhat paraphrased, is contained in the instruction on "bad faith" given by the court below.

Floyd, relying on cases concerning the relationships between real estate broker and principal, as well as between attorney and client, argues that the "confidence and trust" language used in *Price* had the effect of creating a fiduciary relationship between insurer and insured. Therefore, Floyd contends, State Farm had the duty to exercise "the utmost good faith, integrity, fairness and fidelity" (quoting *Byars* v. *Stone*, 186 Va. 518, 529, 42 S.E.2d 847, 852 (1947)). Floyd points out that in the real-estate-broker

context, a broker's failure to disclose material information is, by itself, a breach of fiduciary duty warranting a forfeiture of the broker's right to compensation. *Owen* v. *Shelton*, 221 Va. 1051, 1055, 277 S.E.2d 189, 192 (1981). Thus, Floyd argues by analogy, State Farm's agents' failure to communicate settlement offers was actionable bad faith in itself.

■ Floyd's argument applies the language of *Price* out of context. The relationship of confidence and trust which exists between insurer and insured is not a fiduciary relationship. That conclusion is compelled by the fact that the interests of the parties are parallel and to some extent overlapping, but may diverge when there is a likelihood that the policy limits may be exceeded. The parties have freely entered into a contract for their mutual benefit, and each is presumed to be *sui juris*. Thus, they contract for such policy limits as they may agree upon, and each party is therefore aware of the point where his interest and that of the other party may diverge.

■ The insurer has the right to protect its own interest along with that of the insured. It is that factor which prevents the development of a fiduciary relationship between insurer and insured. A fiduciary owes total fidelity to the interests of his principal. While the relationship continues, he may engage in no self-dealing which may have any adverse effect on the interests of his principal. *See Va. Real Estate Comm.* v. *Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125-26 (1983); *Bruce's Ex'x.* v. *Bibb's Ex'x.*, 129 Va. 45, 49-50, 105 S.E. 570, 572 (1921). That duty of unswerving fidelity is inconsistent with the right of an insurer, pursuant to a contract, to protect its own interest along with that of its insured. The creation of a fiduciary relationship in this context would impose a standard even more favorable to the insured than the negligence standard which we rejected in *Price*. We decline Floyd's invitation to impose so stringent a standard upon the insurer.

■ We are also unpersuaded by State Farm's argument that, in this context, "bad faith" necessarily connotes fraud, deceit, dishonesty, malice, or ill-will. Subjective factors of that kind are inevitably difficult to prove, and are unnecessary to the establishment of "bad faith" on the part of contracting parties who are merely under the obligation to exercise good faith in the conduct of a business relationship. We conclude that an insured, in order to recover for an excess judgment on the ground that the insurer failed to take advantage of an opportunity to settle within the pol-

icy limits, is required to show that the insurer acted in furtherance of its own interest, with intentional disregard of the financial interest of the insured.

■ During their representation of both insurer and insured, attorneys have the duty to convey settlement offers to the insured "that may significantly affect settlement or resolution of the matter." Code of Professional Responsibility, Disciplinary Rule 6-101(D); Ethical Consideration 7-7 (1986). Here, however, it is apparent that such offers, if communicated to Floyd and his parents, would probably have fallen on barren ground. In the circumstances of this case, we hold as a matter of law that the attorneys' failure to communicate the plaintiff's offers to Floyd did not, by itself, amount to a furtherance of the insurer's interest with intentional disregard of the financial interest of the insured.

## D.  STANDARD OF PROOF

■ We agree with State Farm that the trial court erred in requiring proof of "bad faith," however defined, only by a preponderance of the evidence. That standard would be appropriate if the insured were only required to prove negligence, but here, as we have seen, he must prove considerably more.

■ Although not amounting to fraud in this context, "bad faith" runs counter to the presumption that contracting parties have acted in good faith. We have traditionally required that presumption to be overcome by clear and convincing evidence. See *Nicely* v. *Bank of Virginia Trust Co.*, 221 Va. 1084, 1089-91, 277 S.E.2d 209, 212 (1981); *Va. Carolina Co.* v. *Carpenter*, 99 Va. 292, 293, 38 S.E. 143, 145 (1901). Accordingly, we hold that bad faith must be proved by clear and convincing evidence in cases of this kind.

■ Because we conclude that the court erred in instructing the jury, and because the evidence, viewed in the light most favorable to Floyd, would have been insufficient to frame a jury question on the issue of bad faith if the jury had been properly instructed, we will reverse the judgment and enter final judgment here for State Farm.

*Reversed and final judgment.*