SCOTTSDALE INSURANCE COMPANY, ET AL.

v.

JACOB P. GLICK, ET AL.

Record No. 891111

September 21, 1990

Present: All the Justices

*James W. Shortt (James W. Hopper; Warren H. Britt; Jeffrey M. Zwerdling; Parvin, Wilson, Barnett & Hopper; Zwerdling, Oppleman & Paciocco*, on briefs), for appellants.

*Kenneth C. Grigg (A. James Kauffman; Taylor, Hazen & Kauffman*, on brief), for appellees Jacob P. Glick and Jane Glick.

No briefs or arguments for appellees Sylvia Glick, Calvin Covert and Richard L. Hayward.

JUSTICE HASSELL delivered the opinion of the Court.

The principal issues in this appeal involve the construction of a lease and a liability insurance policy.

William W. Glick was the owner of a building and certain real estate located at 840 West Grace Street in the City of Richmond. On September 3, 1982, he and his wife, Sylvia Glick, by written agreement, leased the first floor of the premises to Rebecca and Pierre Harick for a term of five years. The Haricks executed an assignment dated August 1, 1983, wherein they sublet the leased premises to Orestis Markogiannakis. Greca, Ltd. (Greca) was incorporated in Virginia on August 16, 1983, and Markogiannakis was the sole shareholder. Greca, trading as the Greca Restaurant, operated a restaurant on the first floor of the building.

Pursuant to the terms of the lease, Greca obtained liability insurance with Scottsdale Insurance Company. The insurance policy identified Greca as the named insured and William and Sylvia Glick as additional insureds. Wesley Martin purchased all stock in Greca from Markogiannakis on July 1, 1987, and continued operation of the restaurant.

On July 10, 1987, Richard Hayward, a police officer, and Calvin Covert, a fireman, responded to a reported statutory burglary at 840 West Grace Street. During the investigation, Hayward attempted to climb an exterior wooden stairway which was attached to the rear of the building and extended from the ground to an unoccupied second floor which was not leased by Greca. Covert was standing on a landing which was a part of the stairway. Hayward and Covert were injured when the landing and stairway collapsed.

Each filed motions for judgment against Sylvia Glick, Greca, Markogiannakis, Jacob and Jane Glick, individually and as co-administrators of the estate of William Glick, and others.[1] Copies of the motions for judgment were forwarded to Scottsdale. Scottsdale refused to defend against, be liable for, or indemnify the landlords for any judgments that might be entered against them in the Covert and Hayward lawsuits. Jacob and Jane Glick filed a petition for declaratory judgment and requested that the court interpret the lease and the insurance policy and adjudicate the rights and obligations of the parties.[2] The trial court entered a final decree which required Scottsdale to defend and indemnify the landlords. The court also held that the tenants breached the lease by failing to obtain liability insurance with a company licensed to do business in Virginia and that Scottsdale refused coverage in bad faith. We granted Scottsdale and the tenants an appeal.

The trial court construed the provisions in the 1982 lease and concluded that the stairway was a part of the demised premises. The lease states, the "[l]andlord does hereby lease, let and demise to Tenant and Tenant hires from Landlord the first floor of the building with improvements thereon, located at 840 West Grace Street, in the City of Richmond, Virginia, to be used for a restaurant serving the general public." The term "demised premises," which is synonymous with "leased premises", means "[t]hat

---

[1] William Glick died in January, 1987. He devised a life estate in the property to his wife with a remainder interest to his children. Jacob Glick and Jane Glick, individually and as co-administrators of William Glick's estate, and Sylvia Glick will be referred to as "landlords;" Martin and Greca will be referred to as "tenants." Default judgment was entered against Markogiannakis, and he did not appeal.

[2] Sylvia Glick was identified as a defendant in the petition. She asked that the court grant her the same relief requested by the plaintiffs. In its final decree, the court held that she was in the same legal position as the plaintiffs and was entitled to the same relief.

property, or portion of a property which is leased to a tenant." Black's Law Dictionary 431 (6th ed. 1990). The wooden exterior stairway was neither a part of the first floor nor an "improvement thereon" under the terms of the lease. Therefore, we hold that the stairway was not a part of the demised premises.

Scottsdale and the tenants contend that the trial court erred because it held that Scottsdale was required to defend the landlords in the Covert and Hayward lawsuits. Scottsdale and the tenants argue that Greca did not have an insurable interest in the stairway and landing. We disagree.

Liability insurance, like other types of insurance, must be supported by an insurable interest in the insured. *See* 3 *Couch on Insurance* § 24:160 (2 ed. 1984). The nature of the required insurable interest in a liability insurance policy is different from the type of interest necessary to support a property insurance policy. In a property insurance policy, the insurable interest often depends upon whether the insured has a legal or equitable interest in property. The rule for liability insurance is different.

> The insurable interest . . . [in a liability insurance policy] is to be found in the interest that the insured has in the safety of those persons who may maintain . . . suits against him in case of their injury or destruction. The interest does not depend upon whether the insured has a legal or equitable interest in property, but *whether he may be charged at law or in equity* with the liability against which the insurance is taken out.

*Id.* (emphasis added and footnotes omitted). Thus, the dispositive question is whether Greca could be "charged" at law or in equity for the damages incurred by Covert and Hayward. The word "charge" means "to make an assertion against . . . [especially] by ascribing guilt or blame for an offense or wrong . . . [to] accuse . . . to place the blame or guilt for . . . a fault or wrongdoing." Webster's Third New International Dictionary 377 (1986). Greca was, obviously, particularly exposed to claims arising from torts committed in the vicinity of its business operations, as demonstrated by the motion for judgment filed in this case. Ac-

cordingly, we hold that the tenants had an insurable interest in the entire premises at 840 West Grace Street.[3]

Scottsdale next contends that the trial court erred because it held that the burglary investigation was necessary or incidental to the operation of the Greca Restaurant, and therefore, Scottsdale had a duty to defend and pay any judgment that might be entered against its insureds. Scottsdale's policy of liability insurance contained the following provision:

COVERAGE A - BODILY INJURY LIABILITY
COVERAGE B - PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and *all operations necessary or incidental* thereto . . . .

(Emphasis added).

The insurance policy does not define "necessary or incidental." In the absence of a definition, words used in an insurance policy must be given their ordinary and accepted meaning. "Necessary" means "whatever is essential for some purpose . . . of, relating to, or having the character of something that is logically required or logically inevitable or that cannot be denied without involving contradiction . . . ." Webster's Third New International Dictionary 1510 (1986). "Incidental" means "subordinate, nonessential, or attendant in position or significance . . . occurring merely by chance or without intention or calculation . . . being likely to ensue as a chance or minor consequence . . . ." *Id.* at 1142. That which is necessary or incidental can only be ascer-

---

[3] Scottsdale also argues that the landlords cannot be liable for the alleged injuries incurred by Covert and Hayward because Greca agreed in the lease to indemnify and save the landlords harmless from "any and all liability, damage, expense, cause of action, suit, claim, or judgment arising from injuries to person or property on the demised premises, or upon the adjoining sidewalks or parking lots which arise out of any alleged act, failure to act or negligence of [Greca]." The indemnity provision in the lease, however, does not affect the landlords' insurable interest.

tained by an examination of the facts and circumstances of each case.

■ The record reveals that Hayward responded to a reported statutory burglary at the Greca Restaurant. Covert went to the restaurant to assist the police. Hayward was walking on the exterior stairway and Covert was standing on the landing in furtherance of the investigation when the accident occurred. We hold that the investigation of the statutory burglary was incidental to the operation of the restaurant.[4]

Next, Scottsdale and the tenants contend that the trial court erred because its final decree granted the landlords relief which had not been requested in the petition for declaratory judgment. The trial court held that the tenants breached the terms of the lease because they obtained liability insurance from Scottsdale, which was not a company licensed to do business in Virginia as required by the lease. Scottsdale is a surplus lines insurance company which does business in Virginia although it is not technically licensed to do so.

■ Code § 8.01-184 confers upon circuit courts the power to make binding adjudications of right and to issue declaratory judgments in cases of actual controversy. However, the binding adjudications of right must resolve issues specifically pled in the petition for declaratory judgment. The court is not empowered to make binding adjudications of right which are not specifically pled. *Buchner* v. *Kenyon L. Edwards Co.*, 210 Va. 502, 503, 171 S.E.2d 676, 677 (1970). The petition for declaratory judgment did not request an adjudication that the tenants breached the lease by failing to obtain insurance from an insurance company licensed to do business in Virginia. Even though there was evidence adduced during the *ore tenus* hearing that the lease may have been breached, the petition for declaratory judgment was not amended to conform with that proof. Accordingly, the trial court erred when it adjudicated this issue.

Scottsdale and the tenants contend that the trial court erred in holding that the lease required the tenants to indemnify and save the landlords harmless from all liability, damages, expenses, or

---

[4] Scottsdale and the tenants argue that the trial court erred by holding that Scottsdale's policy of insurance provided coverage for claims asserted by Hayward and Covert because they were not injured on or about the demised premises. We need not decide this issue in view of our holding that Scottsdale must provide liability coverage because the investigation was incidental to the operation of the restaurant.

judgments incurred by the landlords in the Covert and Hayward lawsuits. Scottsdale and the tenants assert that the tenants agreed to indemnify the landlords only for their own acts, omissions, or negligence, and that tenants did not agree to provide indemnification for acts or omissions of the landlords.

▮ We agree. The tenants do not have an unqualified duty to indemnify the landlords. The lease contained the following provision:

> Tenant agrees that he will indemnify and save the Landlord harmless from any and all liability, damage, expense, cause of action, suit, claim or judgment arising from injuries to person or property on the demised premises, or upon the adjoining sidewalks or parking lots which arise out of any alleged act, failure to act or negligence of Tenant, its agents or employees.

The lease only required that the tenants provide the landlords indemnification for any claim arising out of the tenants' own acts, omissions, or negligence, or the acts, omissions, or negligence of their agents or employees. Resolution of this issue, however, does not affect Scottsdale because it has a duty, imposed by its insurance policy, to defend any claim that might be asserted and pay any judgment within the policy limits that might be entered against either the tenants or landlords for their acts, omissions, or negligence.

▮ Finally, Scottsdale assigned as error the trial court's holding that Scottsdale's denial of coverage to the landlords constituted bad faith. Code § 38.2-209(A), in relevant part, provides:

> Notwithstanding any provision of law to the contrary, in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy or bond or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

We agree with Scottsdale. In *CUNA Mutual Insurance* v. *Norman*, 237 Va. 33, 38, 375 S.E.2d 724, 726-27 (1989), we stated:

> [I]n evaluating the conduct of an insurer, courts should apply a reasonableness standard. A bad-faith analysis generally would require consideration of such questions as whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact.

Applying these principles, we find that the record does not contain any evidence to support a conclusion that Scottsdale acted in bad faith. Additionally, many of the legal issues raised at trial were issues of first impression in this Commonwealth.

We will affirm those portions of the judgment of the trial court which held that Scottsdale had a duty to defend and indemnify the landlords and tenants for any damages they may be required to pay, which are within Scottsdale's insurance policy limits, in the Hayward and Covert lawsuits. We will reverse that portion of the judgment which held that Greca and Martin breached the lease by failing to obtain insurance with a company licensed to do business in Virginia. We will also reverse that portion of the judgment which held that Scottsdale acted in bad faith.[5]

Accordingly, the judgment of the trial court will be

*Affirmed in part,*
*reversed in part,*
*modified and*
*final judgment.*

---

[5] Scottsdale, Greca, and Martin argued in their brief that the landlords either waived the provision in the lease agreement that Greca and Martin must obtain insurance from a licensed Virginia company or otherwise acquiesced to insurance coverage with Scottsdale. This issue was not raised below and, therefore, it will not be considered upon appeal. Rule 5:25.