Present:  All the Justices

NATIONWIDE MUTUAL INSURANCE COMPANY

v.  Record No. 990161      OPINION BY JUSTICE ELIZABETH B. LACY
                                          January 14, 2000
JOEL ST. JOHN

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

In this appeal we consider whether the trial court properly determined that an insurance company did not act in good faith under Code § 8.01-66.1(A).

I.

Joel St. John, a twelve-year-old boy, had his nose, knee, neck, and back injured in an automobile accident on May 17, 1994.  His mother scheduled an appointment with his family physician and with a chiropractor who had treated Joel's father.  On May 24, 1994, Joel was treated by his family physician for his knee and nose injuries.  The next day Joel was examined by Dr. David M. deBarros, the chiropractor.  Dr. deBarros' examination disclosed objective findings of fixations of the spine, positive findings of a shoulder depression indicating either a muscle tear or nerve compression or stretching, a positive Schepelmann's test which showed pain while flexing the head to the right, and a vertebra that had moved out of position, called a T-12

subluxation. According to Dr. deBarros, all these injuries were caused by the automobile accident.

Initially Joel was treated for these conditions three times a week, and then twice a week for four weeks. Following reevaluation on August 8, 1994, his treatments were reduced to once a week. Joel was periodically reevaluated and his treatment continued at a frequency consistent with his condition at the time of reevaluation. Joel was dismissed from Dr. deBarros' care on April 5, 1995.

Joel was an insured under an automobile liability insurance policy issued to his father by Nationwide Mutual Insurance Company (Nationwide). A medical expense claim of $1,960 for Joel's treatment was submitted to Nationwide. Nationwide referred the claim to Dr. James W. Walker, a chiropractor, for review and evaluation of Joel's medical records. Based on Dr. Walker's review, Nationwide paid $378.50 for medical expenses incurred prior to June 15, 1994, and disallowed all expenses incurred after that date.

Joel, by his mother as next friend, filed suit against Nationwide in the General District Court of the City of Richmond seeking recovery of the medical costs for the ten months of chiropractic care disallowed by Nationwide. Nationwide removed the case to the Circuit Court of the City of Richmond. The jury returned a verdict in favor of Joel for

$1,581.50, approximately the amount of the unpaid balance of the chiropractic medical bills.  Citing Code § 8.01-66.1(A), Joel asked the trial court to double the amount of the damages and award attorneys' fees because Nationwide acted in bad faith when it refused to pay for chiropractic care incurred after June 15, 1994.[*]  The trial court determined that Nationwide's refusal was not made in good faith and entered judgment against Nationwide for $3,162.00 in damages plus attorneys' fees of $1,500.  Nationwide filed an appeal asserting that the trial court erred in holding that Nationwide did not act in good faith under § 8.01-66.1(A).

---

[*] Code § 8.01-66.1(A) provides:

Whenever any insurance company licensed in this Commonwealth to write insurance as defined in § 38.2-124 denies, refuses or fails to pay to its insured a claim of $2,500 or less in excess of the deductible, if any, under the provisions of a policy of motor vehicle insurance issued by such company to the insured and it is subsequently found by the judge of a court of proper jurisdiction that such denial, refusal or failure to pay was not made in good faith, the company shall be liable to the insured in an amount double the amount otherwise due and payable under the provisions of the insured's policy of motor vehicle insurance, together with reasonable attorney's fees and expenses.

The provisions of this subsection shall be construed to include an insurance company's refusal or failure to pay medical expenses to persons covered under the terms of any medical payments coverage extended under a policy of motor vehicle insurance, when the amount of the claim therefor is $2,500 or less and the refusal was not made in good faith.

We begin by addressing the legal principles relevant to our review of the trial court's judgment in this case.  First, although we have not previously considered the principles to be applied by a trial judge when considering whether an insurer acted in bad faith within the meaning of § 8.01-66.1(A), we have addressed that issue in the context of § 38.2-209.  That section allows an insured to recover costs and reasonable attorneys' fees in a declaratory judgment action brought by the insured against the insurer, if the trial court determines that the insurer was not acting in good faith when it denied coverage or refused payment under the policy.  In CUNA Mutual Insurance Co. v. Norman, 237 Va. 33, 38, 375 S.E.2d 724, 726-27 (1989), we observed that § 38.2-209 was intended to be both remedial and punitive and concluded that a standard of reasonableness should be applied in evaluating the conduct of the insurer.  See also Scottsdale Ins. Co. v. Glick, 240 Va. 283, 397 S.E.2d 105 (1990).  The parties suggest that this standard should be applied in this case.  We agree.

Section 8.01-66.1(A), like § 38.2-209, is a remedial statute.  It is limited to claims of $2,500 or less.  Without the statutory authorization for recovery of multiplied damages, together with attorneys' fees and expenses, the

4

expense of litigation to recover such claims would preclude that course of action in many cases. Section 8.01-66.1(A) operates as a punitive statute in the same manner as § 38.2-209 because both punish an insurer whose bad faith dealings force an insured to incur the expense of litigation. Considering the similar purposes of the two statutes, we conclude that the standard of reasonableness enunciated in CUNA should be utilized when applying § 8.01-66.1(A).

The standard of reasonableness requires the consideration of the following issues when determining whether an insurer acted in bad faith under § 8.01-66.1(A):

> whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact.

CUNA, 237 Va. at 38, 375 S.E.2d at 727.

Next, while the parties agreed on the reasonableness standard, they disagreed on the quantum of proof required to prevail under this standard. Nationwide asserts that State Farm Mutual Automobile Insurance v. Floyd, 235 Va. 136, 366 S.E.2d 93 (1988), imposes a clear and convincing evidentiary

5

standard on the insured in this case.  We disagree with Nationwide.

Nothing in Floyd suggests that the principles established in that case are appropriate for application in this case.  In Floyd, an insured was required to show by clear and convincing evidence that its insurer acted in bad faith when it failed to settle a previous tort action resulting in a judgment in excess of the policy limits against the insured.  Id. at 144, 366 S.E.2d at 98.  However, the action in Floyd was a common law breach of contract action, not a claim under a remedial statute allowing recovery of additional damages for refusal to pay claims based on the bad faith of the insurer. Furthermore, to recover in the breach of contract action, the insured had to show that the insurer "acted in furtherance of its own interest, with intentional disregard of the financial interest of the insured."  Id. at 144, 366 S.E.2d at 97.  Such a showing is significantly different than the reasonableness analysis to be applied to determinations of bad faith in this case.

The higher evidentiary standard of clear and convincing evidence applied in Floyd is inconsistent with the remedial purpose of § 8.01-66.1(A) and, absent legislative directive otherwise, an insured's evidentiary burden under this remedial statute is the preponderance of the evidence standard.

6

A third principle relevant to our review is that the facts are reviewed in the light most favorable to the party prevailing below.  The trial court's judgment will be upheld unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it. § 8.01-680; RF&P Corporation v. Little, 247 Va. 309, 319, 440 S.E.2d 908, 915 (1994).  We now apply these principles to the issue in this case.

III.

Nationwide asserts that its decision to deny payment of Joel's medical expenses incurred after June 15, 1994 was reasonable.  Nationwide contends that it conducted a reasonable investigation by engaging Dr. Walker to review the medical records connected with Joel's claim and that it was reasonably debatable whether Joel suffered any back or neck injury as a result of the accident.

Dr. Walker, after reviewing Joel's medical records concluded that "it was difficult to draw any direct causal relationship between the vehicle accident and the diagnosis [of subluxation of T-12 alone]," that other objective findings were made by Dr. deBarros indicating a "sprain/strain" and that "since the doctor didn't keep very good records . . . it was legitimate to consider chiropractic care through June 15th of '94, but not care beyond that time."  Even though Dr.

7

Walker expressed some hesitation at this point concerning the relationship between the accident and the T-12 subluxation diagnosed by Dr. deBarros, Dr. Walker did not question Dr. deBarros' diagnosis that Joel had been injured and recommended payment for treatment Joel had received for those injuries.

Dr. Walker's recommended limitation on the length of time for which payment should be made does not alter his conclusion that the payment by Nationwide for some treatment was appropriate. Nationwide paid for at least a portion of the medical treatment bills, thereby acknowledging that Joel was injured in the accident. Therefore, Nationwide's own actions contradict its assertion that whether Joel's injuries were caused by the May 14, 1994 accident was fairly debatable.

Nationwide also argues that even if Joel was injured in the May 14, 1994 accident, his injuries were so minor that treatment after three weeks was medically unnecessary. However, Dr. Walker's recommended limitation on payment of post-June 15, 1994 medical bills was not based on his opinion that the treatment beyond June 15 was not medically necessary. Instead, it was based on the fact that Dr. Walker couldn't tell whether or not the treatment was required because Dr. deBarros "didn't keep very good records."

The medical necessity of continued treatment was addressed in the pre-trial depositions of Dr. Walker and Dr.

8

deBarros which were admitted in evidence at trial. Dr. Walker maintained his position that the lack of good record keeping was the basis for his decision not to recommend payment for treatment after June 15. Dr. deBarros testified to a reasonable degree of medical certainty that Joel's injuries were caused by the May 14, 1994 accident, and that all the treatment administered to Joel for those injuries was reasonably necessary. Dr. deBarros testified in detail regarding the periodic evaluations of Joel's condition, the conditions requiring treatment, and the necessity for that treatment until Joel was discharged from Dr. deBarros' care. This testimony was not contradicted by Dr. Walker.

Thus, prior to trial, Nationwide had no medical evidence that the injuries were not caused by the May 14, 1994 accident, no medical opinion that the medical treatment received by Joel after June 15, 1994 did not relate to injuries received in the accident, and no medical opinion that the post-June 15 treatment was not medically necessary and reasonable. Nevertheless, Nationwide refused to pay the remaining balance of Joel's medical bills and thus forced the matter to proceed to a trial.

Based on this review, we conclude that there is support in the record for the trial court's determination that Nationwide acted in bad faith in refusing to pay Joel's claim

9

for medical expenses incurred after June 15, 1994, and the trial court's judgment was not clearly erroneous.  We, therefore, will affirm the judgment of the trial court.

<u>Affirmed.</u>

JUSTICE COMPTON, concurring in the result.

On May 17, 1994, the 12-year-old plaintiff was injured while riding in a vehicle operated by his mother that collided with another vehicle.  In the collision, the plaintiff sustained a blow to his nose and one knee.  As a result of the accident, he developed tenderness in his neck and back.

The plaintiff was entitled to medical payments coverage under a policy of automobile liability insurance issued by defendant Nationwide Mutual Insurance Company.  The policy contract provided that defendant would pay all reasonable and necessary expenses for, among other things, medical and chiropractic expenses resulting from the accident.

A week after the accident, the plaintiff was treated by his "family doctor."  The next day, the plaintiff was examined by a chiropractor, who found the plaintiff had sustained muscular and soft-tissue injuries to his neck and back in the accident.  The plaintiff was treated by the chiropractor until he was released from treatment about 11 months following the accident.  The chiropractor was of the opinion, within a reasonable degree of medical certainty, that his treatment and

10

services rendered to the plaintiff were medically necessary as a result of the injuries plaintiff sustained in the accident.

When the plaintiff's parents submitted a claim to defendant for reimbursement of medical expenses under the medical payments provision of the policy, defendant referred the claim to another chiropractor to review the plaintiff's medical records and to render an opinion on the medical necessity of the plaintiff's treatment as it related to the accident. Following this review, the chiropractor opined that based on the medical records he "couldn't draw a direct causal relationship between the accident" and the diagnosis made by plaintiff's chiropractor of "T-12 subluxation." Preferring to err on the side of the plaintiff, even though he felt the medical records were unclear, the defendant's chiropractor advised that the medical care rendered for only about one month after the accident "could be considered" as related to the accident.

The defendant's refusal to pay the full amount of medical expenses claimed generated this lawsuit. In January 1998, plaintiff, through his mother as next friend, filed this action seeking recovery of $1,960, alleging breach of contract and "breach of the defendant's duty to deal with the plaintiff fairly and in good faith."

11

In an October 1998 jury trial, the breach of contract claim was litigated. At that time, defendant had paid $378.50 of the plaintiff's claim.

The sole issue presented to the jury was whether defendant had breached its contract with plaintiff. More specifically, the jury had to determine whether the treatment and services rendered by the plaintiff's chiropractor were medically necessary as a result of the injuries plaintiff sustained in the accident.

The jury found in favor of the plaintiff and fixed the contract damages at $1,581.50, the amount claimed reduced by the sum defendant had paid.

Following discharge of the jury, the plaintiff moved the trial court to "award double damages and reasonable attorney's fees and cost," relying on Code § 8.01-66.1(A). Without taking additional evidence and following oral argument, the court granted the motion, finding "that defendant's denial of payment was not in good faith." The defendant appeals that portion of the October 1998 judgment order which found defendant failed to act in good faith.

When an insurer under these circumstances "denies, refuses or fails to pay its insured a claim of $2,500 or less," Code § 8.01-66.1(A) authorizes the trial court, upon a finding "that such denial, refusal or failure to pay was not

12

made in good faith," to find the insurer liable for "double the amount otherwise due and payable" under the policy's provisions, "together with reasonable attorney's fees and expenses."

In evaluating the performance of an insurer when there is a claim that it acted in bad faith in withholding payment to an insured, courts should apply a "reasonableness standard." CUNA Mut. Ins. Co. v. Norman, 237 Va. 33, 38, 375 S.E.2d 724, 726-27 (1989).

In actions against insurers based upon breach of contract for failure to use good faith, we have held "that bad faith must be proved by clear and convincing evidence in cases of this kind." State Farm Mut. Auto. Ins. Co. v. Floyd, 235 Va. 136, 144, 366 S.E.2d 93, 98 (1988). This is because the concept of "'bad faith' runs counter to the presumption that contracting parties have acted in good faith." Id.

Contrary to the plaintiff's contention, it makes no sense in this insurance contract action alleging bad faith to adopt a preponderance-of-the-evidence standard of proof. Bad faith means the same in any insurance contract context, no matter under what circumstances the lack of good faith is sought to be proved.

Applying the foregoing principles, I would hold, however, that the trial court did not err in finding bad faith in this

13

case, given the record with which it was presented. The two chiropractors testified by video deposition. The deposition of the defendant's chiropractor was taken about three weeks before trial. The deposition of plaintiff's chiropractor was taken two weeks prior to trial. Thus, well in advance of trial, defendant was armed with the information that the plaintiff's witness would give an unqualified opinion of medical necessity while its own witness would give an inconclusive opinion on the subject. In effect, prior to trial defendant's representatives knew, or should have known, that it had no evidence to rebut the plaintiff's evidence on the only issue in the case.

Additionally, when the plaintiff made his post-verdict motion, there was no request from the insurer to offer evidence on the charge of bad faith, an allegation that had been made when the action was filed. The court was not presented with any testimony on the subject of reasonableness from a claims supervisor or claims adjuster upon how the insurer finally evaluated the claim, given the medical testimony, or upon the insurer's reasoning to support its decision to deny the claim and to force the plaintiff to trial.

Therefore, I would affirm the judgment of the trial court.