Present:  All the Justices

MID-EAST SERVICES, INC.

v.  Record No. 992543    OPINION BY JUSTICE DONALD W. LEMONS
                                        September 15, 2000
ENTERPRISE FORD TRACTOR, INC.

FROM THE CIRCUIT COURT OF YORK COUNTY
Thomas B. Hoover, Judge

In this appeal, we consider whether the trial court erred in finding that Enterprise Ford Tractor, Inc. ("Enterprise") was not a seller or an agent for a seller in a transaction involving the sale of lawn servicing equipment to Mid-East Services, Inc. ("Mid-East").

I

On June 4, 1997, Mid-East, by its agent, Robert L. Phillips, executed a bill of sale and tendered a check in the amount of $47,000 to purchase certain lawn servicing equipment[1] from William T. Hall, the owner and operator of York River Services, Inc. ("York River").[2]  The equipment was located in a compound at Fort Bragg, North Carolina, where York River had been performing a maintenance contract at the military base. Apparently, for reasons undisclosed in the record, York River

_____

[1] The equipment consisted of three Ford Tractors, five Alamo Flail Mowers, one swing trim, one 500-gallon fuel tank, one bush hog, two 20-foot storage vans, one 40-foot storage van, one base radio station, and nine hand-held radios.
[2] Although the bill of sale listed William T. Hall, individually, as "seller," testimony revealed that the

was not able to complete its contract and Mid-East had been requested to perform the services. During the period pertinent to this dispute, Enterprise never took possession of the equipment.

On the day after the check was issued, Mid-East stopped payment on the check ostensibly because of concerns that "Mr. Hall was not legitimate." Also on the same day, Phillips contacted Enterprise and spoke with its representative, Bruce E. Strack, about the equipment itemized on the bill of sale from Hall. Strack informed Phillips of an existing lien held by Ford New Holland Credit ("New Holland") on the equipment, for which Enterprise was a guarantor. Strack told Phillips that he would contact New Holland to determine the pay-off amounts. With Strack acting as intermediary, a facsimile transmission was sent from Strack to Phillips indicating that a "check in the amount of ($47,000.00) will pay for" certain equipment listed. Mid-East had been willing to pay $47,000 for the equipment listed on the bill of sale with Hall. However, not all of the equipment listed on the bill of sale was specified on the facsimile from Strack. Consequently, the price was negotiated to $38,500 and Mid-East tendered its check in that amount. Enterprise sent New Holland a check for

equipment had been previously sold by Enterprise to York River, not to William T. Hall.

2

$30,000 and applied the balance of $8,500 toward Hall's past-due account of $20,000 with Enterprise. The parties agreed that, at the time of this transaction, Enterprise did not have knowledge of a lien on the equipment held by United Leasing Corporation. At least for this transaction, Mid-East alleges that Strack told Phillips that Enterprise owned the equipment. Strack denies ever making such a statement.

Approximately three weeks later, Phillips contacted Strack again regarding the purchase of an additional tractor subject to New Holland's liens. Strack confirmed the conversation with a facsimile stating, "Per our conversation, you have a signed retail sales agreement with Bill Hall of York River Services for a 3930 s/n BD75226 in the amount of $9,000. If you send us the money we will forward it to New Holland to release the [lien]." According to Strack, this second facsimile was more specific because United Leasing had since called to inform him of its lien on the equipment. Strack also testified that he had informed Phillips about the United Leasing lien. Nonetheless, Mid-East tendered its check for $9,000 to Strack, who forwarded it to New Holland.

Toward the end of June 1997, a representative of United Leasing and a deputy sheriff went to the compound at Fort Bragg with legal documents authorizing the repossession of the subject equipment. Mid-East needed the equipment to perform

3

its contract at Fort Bragg and, on July 1, 1997, Mid-East and United Leasing entered into a lease agreement for the use of some of the equipment in question for two months at a cost of $2,500 per month. At the end of August, United Leasing took possession of the equipment.

On January 9, 1998, Mid-East filed a motion for judgment contending that Enterprise "induce[d]" Mid-East to enter into the two contracts for the subject equipment by stating that "it had full ownership and authority to sell the equipment free of liens." Mid-East alleged that Enterprise breached an express contract, perpetrated fraud, and violated various provisions of the Uniform Commercial Code as adopted in Virginia,[3] as well as Code § 18.2-217(a).[4] Mid-East sought to recover actual damages of $52,500 and $50,000 in punitive damages, plus interest and costs.

On July 15, 1999, the circuit court heard evidence and dismissed the case, stating in its order, "the [c]ourt is of the opinion that the Plaintiff, MID-EAST SERVICES, INC. has

---

[3]Specifically, Mid-East alleges violations of Code §§ 8.2-206, 8.2-301, 8.2-312, 8.2-313, and 8.2-721.

[4]Code § 18.2-217(a) states, in pertinent part:

> Any person, firm, corporation or association who in any manner advertises or offers for sale to the public any merchandise, goods, commodity, service or thing with intent not to sell, or with intent not to sell at the price or upon the terms advertised or offered, shall be guilty of a Class 1 misdemeanor.

4

not proven its case on any count and, therefore, the Defendant should prevail." Specifically, the trial court found that Enterprise acted "only as lienholder or agent for the lienholder. They're not the seller, they're not the dealer, they're not an agent for the seller."

                                    II

In this appeal, Mid-East alleges that the trial court erred as a matter of law when it: (1) failed to enforce the statutory warranty of good title created by Code § 8.2-312; (2) failed to find that the goods were entrusted to Enterprise pursuant to Code § 8.2-403(2); (3) ruled that a formal bill of sale was required to transfer ownership of the goods to Mid-East; (4) "disregarded the complete failure of consideration where the parties intended to transfer the goods with good title and Mid-East paid Enterprise but received goods with defective title and Enterprise refused to return Mid-East's consideration"; and (5) found Enterprise was acting as a lienholder when no action pertaining to secured transactions under Title 8.9 took place.[5]

Enterprise argues it was not a "seller" under Title 8.2 of the Code and that, even if Code § 8.2-312 applied in this case, the warranty of good title was excluded under subsection

---

[5] The allegations of fraud and violation of Code § 18.2-217(a) are not the subject of assignments of error.

(2) because the circumstances gave Phillips reason to know that Enterprise did not claim title to the equipment. Additionally, Enterprise maintains that the evidence is sufficient to support the trial court's conclusion that Enterprise acted as a "lienholder or agent of a lienholder" in this transaction. Further, Enterprise argues that it did not act as a merchant under an entrustment within the meaning of Code § 8.2-403(2) and, finally, that because it did not act as a seller or agent for the seller, it could not be accountable for any failure of consideration.

### III

A review of the record reveals that Mid-East never alleged that Enterprise acted as a merchant entrusted with goods pursuant to Code § 8.2-403(2). Because the matter was not presented to the trial court, we will not consider the argument on appeal. See Rule 5:25; Pulliam v. Coastal Emergency Servs., 257 Va. 1, 16, 509 S.E.2d 307, 316 (1999).

### IV

The remaining assignments of error are resolved by the trial court's factual finding that Enterprise was not the seller or an agent for the seller in this transaction.

On appeal, we review the facts in the light most favorable to the prevailing party at trial. Nationwide Mut. Ins. Co. v. St. John, 259 Va. 71, 76, 524 S.E.2d 649, 651

6

(2000).  A trial court's judgment is presumed to be correct and, on appeal, we will not set it aside unless the judgment is plainly wrong or not supported by the evidence.  Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 57, 419 S.E.2d 627, 630 (1992).

The trial court found that the only bill of sale in this transaction was from Hall as seller to Mid-East as buyer.  All of the items referred to in the facsimile dated June 5, 1997 are identified in the bill of sale dated June 4, 1997.  A fourth tractor referred to in the facsimile dated June 17, 1997 was not listed in the bill of sale; however, Strack, on behalf of Enterprise, clearly indicated in the facsimile that a retail sales agreement existed between Mid-East and "Bill Hall of York River Services" for the purchase of this additional tractor.  In both transactions Strack, on behalf of Enterprise, identified his role as "negotiations middleman" and the trial court found that he was acting for Enterprise and for New Holland.  The trial court specifically found that Strack, acting on behalf of Enterprise, was not an agent for Hall or York River.

### A.

Mid-East asserts that Title 8.2 of the Uniform Commercial Code as adopted in Virginia applies to these transactions.  Most assuredly it does.  However, Mid-East mischaracterizes

the parties to these transactions.  As the trial court found, the seller was Hall and the buyer was Mid-East.  Enterprise acted on its own behalf and on behalf of New Holland, a lienholder.  Enterprise was not a seller or an agent for a seller under Title 8.2.

Mid-East's arguments are dependent upon characterizing Enterprise as a "seller" under Title 8.2 of the Code.  See Code § 8.2-103(d) ("seller" defined as "a person who sells or contracts to sell goods").  If Enterprise is a "seller" under Title 8.2, then Code § 8.2-312(1) provides, subject to exclusion or modification under subsection (2), a warranty from the seller that:

> (a)  the title conveyed shall be good, and its transfer rightful; and
> (b)  the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

Because Hall, not Enterprise, was the seller in these transactions, Mid-East may not look to Enterprise for a warranty under Code § 8.2-312(1).  See, e.g., Moore v. Allied Chem. Corp., 480 F. Supp. 364, 375 (E.D. Va. 1979)(breach of warranty within the meaning of Commercial Code of Virginia requires a sale which "must involve the passing of title of goods from the seller to the buyer for a price").

8

## B.

Mid-East maintains that the trial court was plainly wrong in its finding that Enterprise was an agent for the lienholder because Enterprise never utilized any of the provisions of Title 8.9 of the Uniform Commercial Code pertaining to secured transactions. Again Mid-East misunderstands the nature of the transactions that took place. Enterprise, acting for itself or as an agent for New Holland, was not seeking to create, perfect, or enforce a security interest. As the trial court found, Enterprise was the "negotiations middleman" for the purpose of the pay-off of New Holland's lien and Enterprise's overdue account with York River.

## C.

Mid-East states as an assignment of error that "[t]he trial court erred in ruling that a formal bill of sale was required to transfer ownership of the goods to Mid-East." Nowhere in the record was such a ruling made by the trial court. Presumably, Mid-East's quarrel is that the trial court rejected the characterization of the two facsimiles as bills of sale. What the trial court did find is that there was a bill of sale, dated June 4, 1997, between Hall and Mid-East. The evidence further supports the trial court's conclusion

9

that the transfer of the fourth tractor was the subject of a "signed retail sales agreement" between Hall and Mid-East.

### D.

Finally, Mid-East complains that "[t]he trial court erred when it disregarded the complete failure of consideration where the parties intended to transfer the goods with good title and Mid-East paid Enterprise but received goods with defective title and Enterprise refused to return Mid-East's consideration." There may have been a failure of consideration in this transaction, but once again Mid-East mistakes the roles played by the various parties.

The trial court did not make a finding concerning failure of consideration. With ample support in the record, the trial court found that Enterprise was neither the seller nor an agent for the seller. The consideration paid was to Hall in the form of direct payment of Hall's or York River's indebtedness. If a failure of consideration occurred, it was between Mid-East and Hall rather than between Mid-East and Enterprise.

### V

For the reasons stated, we conclude that the trial court was not plainly wrong or without evidence to support its dismissal of the motion for judgment. See Wright & Hunt v.

10

<u>Wright</u>, 205 Va. 454, 460, 137 S.E.2d 902, 907 (1964).

Accordingly, we will affirm the judgment of the trial court.

<u>Affirmed</u>.