# CIRCUIT COURT OF PRINCE WILLIAM COUNTY

Nationwide Mutual
Fire Insurance Co.

v.

Ernest H. Fore et al.

November 22, 2005

Case No. (Chancery) 56072

BY JUDGE WILLIAM D. HAMBLEN

In the above-styled matter, Nationwide Mutual Fire Insurance Company has filed a Motion for Declaratory Judgment seeking a construction of certain policy language and a ruling with respect to its duties under a policy it issued to Mr. and Mrs. Fore, defendants herein. It is the contention of the plaintiff that it never became subject to an absolute duty to perform under the policy as a result of the failure of the defendants to fulfill a condition precedent established by certain policy language. The precise reach and mandate of that language, a notification provision, is the crux of this litigation. The matter was heard November 16, 2005, and taken under advisement to allow for further consideration of the arguments and authorities cited by counsel. After review, I am of the opinion that the position taken by the plaintiff in this litigation is correct and should be sustained for the reasons detailed *infra*.

The factual genesis of this proceeding was not the subject of substantial contention and, to the extent material to this decision, can be dealt with in summary fashion. On or about November 21, 2003, Vicenta Barquin, while walking in the vicinity of the Fore residence, suffered some misadventure as a

consequence of the actions of the Fores' dogs. Mrs. Fore became aware of the occurrence immediately thereafter, coming on the scene in time to see Ms. Barquin still sitting or lying in the street or sidewalk in front of the Fores' house. Mrs. Fore called her husband by telephone to report the incident, and he returned to the house some twenty minutes later to find Ms. Barquin still there. Both Mr. and Mrs. Fore spoke with Ms. Barquin at that time.

A county animal warden was summoned to the scene, and her report, dated November 22, 2003, was introduced into evidence at the November 16, 2005, hearing. This report, signed by Mrs. Fore as the "responsible party," alleged the incident to have taken place November 21, 2003, and recited that Ms. Barquin reported having been knocked down and injured by three dogs (concededly the Fores') while walking on the street in front of their house. Further, the warden's report made reference to injuries Ms. Barquin had allegedly sustained and related that she intended to seek medical treatment.

Mrs. Fore spoke with Ms. Barquin's daughter on November 22, 2003, and was given to understand by her that Ms. Barquin was having "problems" as a result of the "attack" by the Fores' dogs and was seeking medical treatment.

Thereafter, two letters were written to the insureds by Ms. Roltsch-Anoll, an attorney engaged by Ms. Barquin. Dated February 25, 2004, and April 21, 2004, both letters were mailed to the Fores at their home address as contained in the report by the animal warden. The second letter arrived on April 24, 2004. It is the contention of Mr. and Mrs. Fore that the first letter did not arrive until the last week of March or the first week of April. Given that it was sent to the same address that resulted in the second letter having been delivered in four days, it is reasonable to infer that the Fores' recollection with respect to the arrival date of the first letter may well be incorrect.

At various times after the incident with the dogs, Mr. Fore made a few ineffectual attempts to contact his Nationwide agent, Mr. Dodson. Failing in each such attempt, he left a series of messages for Mr. Dodson to return his call. These messages were perfunctory and did not serve as a notification of claim or otherwise constitute substantial compliance with the condition precedent here at issue. Mr. Dodson testified that he had not received any of Mr. Fore's messages and did not return any of his calls. On May 3, 2004, the insureds in fact filed a notice of claim with Nationwide that all parties agree was sufficient in content, all things being equal, to trigger the insurer's duties under the policy.

In September 2004, Ms. Barquin filed a lawsuit naming Mr. and Mrs. Fore as defendants and seeking compensation for the injuries she allegedly sustained on November 21, 2003, as a result of the events outlined *supra*.

Thereafter, Nationwide filed this proceeding in order to obtain a declaration with respect to its duties to the Fores under the terms of a policy of insurance concededly in effect at all relevant times. It is the language of that policy that is at issue here.

A subsection of the policy titled "Duties after loss" that appears in a section titled "Liability Conditions" directs the insureds that, in case of a "loss," they must notify the insurer or its agent "as soon as practicable" of certain things pertaining thereto. The evidence here established without question that the insureds did not comply with this provision until May 3, 2004. The term "loss" as used in Liability Conditions is not defined in the policy. All parties concede the term to be ambiguous as used in this section of the policy.

Contending that the "loss" occurred on November 21, 2003, or at the latest January 2004, Nationwide urges that its duties under the policy never became absolute by virtue of the insureds' failure to comply with the condition precedent established by the above-referenced notification procedures. The insureds maintain that the "loss" did not occur until the receipt of the second of Ms. Roltsch-Anoll's letters on April 24, 2004, and that their notification made some nine days later was timely.

"Loss" as used in the section of the policy here at issue is not defined. That being the case, it is to be afforded its "ordinary and accepted meaning." *See Scottsdale Ins. Co. v. Glick*, 240 Va. 283, 288, 397 S.E.2d 105 (1990). "Loss," as with many other words in our language, is commonly used to communicate a number of ordinary, albeit distinct, meanings, with the appropriate meaning to be accorded to a specific use of the word dependant to some degree on the context in which it appears.

Broadly speaking, the word appears here in a contractual document under whose terms the plaintiff promises, under delineated circumstances, to indemnify the insureds against a host of defined risks. More specifically, the terms appears in a section titled "Duties after loss" that directs the insured to accomplish a number of specific tasks, among which are the "notice of accident or occurrence" provision implicated here. Directly following this notification requirement, the insured is directed to "*immediately* forward to [the insurer] every document relating to the accident or occurrence." (Emphasis added.) The intent of the parties, as expressed in the contract, is clear enough: the insurer wanted to be apprised immediately of any event that might ultimately cause it to pay money to a third party on the insureds' behalf. In my view, the common sense, fairer meaning to be given to the term "loss" as it specifically is used here is that the loss "occurs when the insured risk

causes damages," *see Ins. Co. of N. Am. v. Abiouness*, 227 Va. 10, 14, 313 S.E.2d 663 (1984), and that this would be the conclusion reached by a person of ordinary intelligence reading the policy in its entirety. 2 *Couch on Insurance* § 22:38 ("Usual and ordinary meaning" defined as "that meaning which would be attached to the contract by a reasonably intelligent person acquainted with all the operative usages and knowing all the circumstances existing prior to and at the time of the contract").

The defendants urge that the duty came into existence only upon receipt of the second letter from Ms. Barquin's attorney. Citing a number of decisions standing for the general proposition that ambiguity in a policy is to be resolved against the insurer and in favor of coverage, the defendants contend this doctrine should prevail here. However, this is not a doctrine without limit. The construction adopted should be "reasonable" and "absurd results are to be avoided." *Transit Cas. Co. v. Hartman's Inc.*, 218 Va. 703, 708, 239 S.E.2d 894 (1978). In an earlier decision, *Ayres v. Harleysville Mutual Casualty Co.*, 172 Va. 383, 2 S.E.2d 303 (1939), the Supreme Court of Virginia quoted with approval from a learned treatise that "where two interpretations *equally fair* may be made, that which allows a greater indemnity will prevail." *Id.* at 389 (emphasis added). It is my opinion upon considering the contract as a whole that the defendants' interpretation of the word "loss" is not a reasonable, fair interpretation deserving of coequal weight with the plaintiff's interpretation. Because the defendants' interpretation is strained, their argument that any ambiguity need be resolved in their favor necessarily fails.

I find, therefore, that the only reasonable interpretation of the word "loss" in this case dictates that the insureds' duty to notify Nationwide came into existence here no later than November 22, 2003. Mr. and Mrs. Fore failed to make this notification until May 3, 2004. Their delay in doing so was material and extinguished the insurer's duties under the policy as otherwise might have been triggered by the Barquin incident.